"
"
"
"
"
"
"
"
"
"

# EXHIBIT D



Deval L. Patrick, Governor
Frank DePaola, Acting Secretary & CEO



## MINUTES

## MassDOT BOARD MEETING OF OCTOBER 22, 2014

At the call of the Chair, a Meeting of the Board of Directors of the Massachusetts Department of Transportation was held at the State Transportation Building, MassDOT Boardroom, Suite 3830, Boston, MA.

Those present were:  Messrs. Jenkins, Davey, Bonfiglio, Blue, Macdonald, Miss Loux and Mr. Whittle being the Board of Directors of the Massachusetts Department of Transportation.

Also present were Frank DePaola, Administrator-Highway Division; Celia Blue, Assistant Secretary and Registrar of Motor Vehicles; Dr. Beverly Scott, General Manager, Jeffrey Simon, Assistant Secretary for Real Estate and Asset Management; Cyndi Roy-Gonzalez, Assistant Secretary for Communications; Faye Boardman, MassDOT Chief of Staff, Jon Davis, Chief Financial Officer-MBTA; Dana Levenson, Chief Financial Officer-MassDOT; Paige Scott Reed, General Counsel,  Owen Kane, Senior Counsel to the Board and Paula Fallon.

The Chairman, Mr. Jenkins, presided.

Chairman Jenkins called the Open Meeting to Order and presented the order of business.

Chairman Jenkins opened up public comment period.

The first speaker was Jim White from AACT. Mr. White spoke in favor of the Red and Orange Line Contract before the Board today

The next speaker was Tom Faber, from Bombardier Transit Corporation. Mr. Faber would like the Board to post pone any action of the Red and Orange Line cars until they can put in their Best and Final Offer.

The next speaker was Andy Hyer from Hyundai Rotem. Mr. Hyer would like the Red and Orange Line car item to be postponed.

The next speaker was Larry Varn from Hyundai Rotem. He would like the Board to postpone their vote on the Red and Orange Line Cars.

The next speaker was Jeffrey Ferris from Bridging Forrest Hill. Mr. Ferris would like to Board to postpone their vote on the Casey Arborway project.

The next speaker was Bernard Doherty. Mr. Doherty asked the Board to postpone their vote on the Casey Arborway project.

The next speaker was Kevin Moloney from the Casey WAG. Mr. Moloney would like to postpone the vote of the Casey Arborway project.

The next speaker was John Spears from Bridging Forest Hills. He would like the Board to postpone the vote on the Casey Arborway project for another month.

The next speaker was Bob Maginn. Mr. Maginn asked that the Board to consider not voting for China CNR Corporation for the Red and Orange Line cars due to the actions of the Chinese Government.

The next speaker was Ling Chai. Ms. Chai would like the Board to consider not voting for China CNR Corporation for the Red and Orange Line cars due to the actions of the Chinese Government.

The next speaker was John Lovett from Bridging Forest Hills. Mr. Lovett is against the contract for the Casey Arborway project.

The next speaker was Maurice Andrani from Kawasaki Rail Car, Inc. Mr. Andrani would like the Board to postpone their vote on the Red and Orange Line cars.

The next speaker was Sarah Freeman. Ms. Freeman is in support of the contract for the Arborway Project. She hopes that the contract will go forward today.

The next speaker was Lee Auspitz. Mr. Auspitz wanted to make corrections and gave some updates from his appearance at the Board during public comment two years ago. He is a supporter of the Green Line but his issue is the miss location of the Medford Hillside.

Chairman Jenkins closed public comment period.

Chairman Jenkins announced we would start the reports of the Administrators since the Secretary has not arrived yet.

Secretary Davey arrived at meeting.

Frank DePaola, Administrator of Highways gave his report. The Administrator updated the Board on the success of the Public Private Partnership Industry Day that was held at the building. He thanked Dana Levenson on his planning and hard work for the making the event a success. He ended with the announcement that they are working on the Snow and Ice season working closely with staff and vendors. They are ready for the challenge.

Next Chairman Jenkins recognized the Secretary for his work at MassDOT as Secretary and as General Manager of the MBTA. Director Loux also wished the Secretary Davey the best and expressed her heartfelt gratitude for his strong and highly effective leadership, his ability to move our state transportation agenda forward has been a remarkable achievement in such a short time. (full comments attached) Paige Scott Reed also thanked the Secretary for his leadership on behalf of staff at MassDOT.

Next Secretary Davey gave his report. The Secretary updated the Board on the Employee Recognition Program. The group is the National Safety Month Working Group and the second group is the Wellington Carhouse Rescue Team. The Secretary made remarks about the approval of the Red and Orange Line Cars at today's meeting. The Secretary ended with remembering his time as Secretary and General Manager and he thanked the Governor, Chairman Jenkins, Director Loux and Director Whittle. He announced that Frank DePaola will act as Secretary until the end of the Administration. He ended thanking the hard working women and men at MassDOT.

Chairman Jenkins allowed Robert Sloane to speak because he missed public comment sign up. Mr. Sloane is in support of the Casey Arborway Project.

Next Registrar Blue began her report thanking Secretary Davey. The Registry is pushing renewals online, between September and October about 10 percent. They are pushing using all tools in their tool kit. She thanked the Highway Division and MBTA for the use the message boards and announcement on the system.  She talked about the Veterans Plate, the Gold Star family Plate and the license kiosk.

Next the General Manager gave her report. She started with discussing safety. They sent out a safety flash on Ebola safety to make sure employees are well advised and informed. The MBTA will hold a public meeting for the D Line branch service. The Authority has risen in all modes and the light night service is doing well. The MBTA will teaming working on the Bus Plus program and web

based applications. She ended with acknowledging Deputy Chief Operating Office, Dion Stubbs, Mary Fernandes, Chief Paul MacMillian and Tom Boyle from the Everett Shops.

The Chairman announced that Administrator Willenborg submitted his report because he was not going to be present at the meeting.

Next Rachael Bain gave her report on the Office of Performance and Accountability Report. Back in July Ms. Bain brought a draft of the report, this is the first report. Ms. Bain went through the highlights. The format has not changed to what they saw in the draft. The structurally deficient bridges remain stable, the airport runway pavement in the Commonwealth's airports are within 5% of the 2018 target. The RMV Call center customer wait times continue to trend down. Statewide, customers spent an average of 30 minutes waiting for service at Registry branches this quarter. She ended with a project they are planning to work with in the future on tracking construction projects.

Next Ms. Emily Grandstaff-Rice, President Boston Society of Architects gave an award to the MBTA. The Commonwealth Award honors an organization that has exerted uncommon influence on public awareness on architecture and the build environment. As the oldest subway system in the United States the MBTA has continually exerted innovation over its 116 year history.

Next item on the agenda was presented by General Manager Scott. The General Manager requested the Board of Directors to approve contract with CNR MA Corporation ("CNR MA"), a joint venture of China CNR Corporation

Limited and CNR Changchun Railway Vehicles Co., Ltd., that has formed a new Massachusetts Corporation, to furnish and deliver 284 Orange and Red Line vehicles. The contract includes the purchase of 152 new Orange Line vehicles and 132 new Red Line vehicles, counting the option to purchase 58 additional Red Line vehicles. The contract also includes Capital Spare Parts, CCTV Operator Display Screens, Gap Mitigation Devices, LCD Monitors, Automatic Passenger Counting Systems, and two Training Simulators, at a total delivered cost of $566,600,000.00 (base plus options). A Domestic Content Audit will be conducted prior to issuance of NTP. In addition, they request the Board of Directors to execute an Intergovernmental Service Agreement with the Massachusetts Bay Transportation Authority in the amount of $801,293,065 to fund the purchase of new Red and Orange Line vehicles and the associated support costs for the procurement. The Board discussed not using the Best and Final Offer part of the contract.

On motion duly made and seconded, it was

**VOTED:**

**That, subject to the approval of the Massachusetts Department of Transportation, the General Manager and Rail & Transit Administrator be, and she hereby is, authorized to execute a formal contract, in a form approved by the General Counsel, with CNR MA Corporation, a Massachusetts corporation that is a joint venture of China CNR Corporation Limited and CNR Changchun Railway Vehicles Co., Ltd., to furnish and deliver 284 Orange and Red vehicles in accordance with**

**Technical Specification No. VE- 10-036, at a total not-to-exceed delivered cost of $566,600,000.00.**

**FUTHER VOTED: the Board of Directors hereby approves and authorizes the MassDOT Secretary and CEO to execute an Intergovernmental Service Agreement with the Massachusetts Bay Transportation Authority in the amount of $801,293,065 to fund the purchase of new Red and Orange Line vehicles and the associated support costs for the procurement.**

The next item on the agenda was presented by Tom Donald. Mr. Donald requested the Board to award and execute, Highway Division entitled, "Boston – Roadway Reconstruction and Related Work (Including Casey Overpass Removal and MBTA Station Alterations) along a Section of Route 203 (Arborway) at Washington Street with a Barletta Heavy Division in an amount of $59,925,000 based upon a schedule of unit prices, said contractor being the lowest responsible and eligible bidder in response to requests for sealed proposals. The Board discussed the community work that was done with this project. Mr. Donald noted that there were 45 public input meetings. The Board asked why it is being passed now. The Department stated that they don't know how long the bridge will be able to be used it is a safety issue.

On motion duly made and seconded, it was

**VOTED: That the Secretary/CEO and/or Administrator for the Highway Division, be and hereby is, authorized to award and execute, in the name and on behalf of the Department, and in a form approved by General Counsel, a certain Highway Division entitled, "Boston – Roadway Reconstruction and Related Work (Including Casey Overpass Removal and MBTA Station Alterations) along a Section of Route 203 (Arborway) at Washington Street with a Barletta Heavy Division in an amount of $59,925,000  based upon a schedule of unit prices, said contractor being the lowest responsible and eligible bidder in response to requests for sealed proposals.**

The next item on the agenda presented by Jeffrey Simon was approval of the Back Bay Term sheet. To allow for the redevelopment and ongoing operations of the Back Bay Station concourse by Boston Properties ("BP") and to allow for future development of up to three additional buildings at the John Hancock Garage and Back Bay Station by BP, the Board of Directors is asked to authorize the MBTA to lease portions of Back Bay Station and the bus-way (as well as related air rights) to MassDOT, and to allow for their inclusion in an amended and restated lease to BP, and to authorize the negotiation and execution of an amended and restated master lease and other agreements with Boston Properties, all pursuant to a Term Sheet between MassDOT and BP dated October 10, 2014. The proposed transactions with BP will include three basic components; Back Bay Station, upon execution of the master lease, BP will assume immediate operational control of the Back Bay Station concourse (the above-ground station area, excluding the train and Orange Line platforms, and excluding the areas inside the Orange Line turnstiles), and will remain responsible for the station maintenance throughout the 99-year term of the lease. BP will manage the retail spaces and be responsible for maintenance and operations of the public spaces on the concourse level. Director Loux asked Mr. Simon to make sure that Boston Properties finds an appropriate location for the civil rights activist A. Philip Randolph statue. She also suggested him looking into innovate ways to interact with the statue by use of smart phone apps. The Board had some concerns with the terms of the agreement. They want to make sure

they are getting the best deal they asked Mr. Simon to come back to them with the information they were looking for.

On motion duly made and seconded, it was

**VOTED: to table the Back Bay Term sheet item.**

The next item on the agenda presented by Shawn Warren from KPMG was MBTA's Fiscal Year 2014 Audited Financial Statements. Mr. Warren presented the MBTA's Fiscal Year 2014 Audited Financial Statements. KPMG has audited the accompanying financial statements of the Massachusetts Bay Transportation Authority, a component unit of the Massachusetts Department of Transportation, which comprise the statements of net position as of and for the years ended June 30, 2014 and 2013, and the related statements of changes in net position, and cash flows for the years then ended, and the related notes to the financial statements. Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error. KPMG's responsibility is to express an opinion on these financial statements based on our audits. They conducted their audits in accordance with auditing standards generally accepted in the United States of America and the

standards applicable to financial audits contained in Government Auditing Standards, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement. An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In their opinion the financial statements present fairly in all material the net position of the MBTA as June 30, 2014 and 2013 respective changes in its net position and its cash flows thereof for the years then ended, in accordance with U.S. generally accepted accounting principles. Their audits were conducted for the purpose of forming an opinion on the financial statements that collectively comprise the Authority's basic financial statements.

On motion duly made and seconded, it was

**VOTED: To approve the MBTA's Fiscal Year 2014 Audited Financial Statements.**

The next item on the agenda presented by Beth Pellegrini was the 2010 MHS Variable Rate Demand Obligation bonds liquidity facilities. Ms. Pellegrini began with a background of the Bonds. In June of 2010, $800 million of Variable Rate

Demand Obligation Bonds on the Metropolitan Highway System (MHS) were issued to refinance prior obligations of the former Massachusetts Turnpike Authority. Unlike fixed-rate bonds, the interest rate on these bonds float with the market based upon an agreed upon index.   The investors who buy these Variable Rate Bonds also require an option to put back these bonds in the open bond market on a weekly basis.  When these bonds are put back – which is a rare occasion - they are resold to other investors by the remarketing agent, usually a bank.    Due to this "put" feature on these Variable bonds, MassDOT is required by the market to purchase liquidity facilities.  These liquidity facilities provide funds to purchase the bonds that have been tendered to the issuer (i.e. MassDOT) or its remarketing agent but which cannot be immediately remarketed to new investors.  The provider of the liquidity facility, typically a bank, purchases the bonds until such time as the bonds can be remarketed to another investor. Currently MassDOT has three liquidity facilities expiring on December 31, 2014: a letter of credit (LOC) and two standby bond purchase agreements (SBPAs) on the subordinated variable rate bonds.  These facilities provide $280 million of liquidity credit support on these variable rate bonds.   In July 2014, MassDOT's Office of the Chief Financial Officer issued a Request for Response (RFR) from qualified firms interested in providing replacement liquidity facilities.  The objective of the RFR was to achieve a diversified portfolio of counterparties that provided the best value while staggering expiration dates.  After a careful analysis of the RFR respondent's proposals with the assistance of our financial

advisor, Omnicap, the selection committee recommends the proposed bank facility replacements as shown in the detailed summary schedule that was included in your package. The proposed facilities replacements are; for A-3 Series in the amount of $92.845 million – Propose LOC with change in provider to Helaba (Landesbank Hessen-Thüringen Girozentrale)  with expiration date of April 12, 2020; for A-6 Series in the amount of $92.845 million – Propose SBPA/LOC with change in provider to Sumitomo Mitsui Banking with expiration date of April 12, 2019; for A-7 Series in the amount of $94.230 million – Propose SBPA with change in provider to TD Bank  with expiration date of  May 27, 2018. These replacement facilities provide for a totally diversified portfolio of liquidity providers, modes and maturity dates while offering competitive pricing allowing MassDOT to minimize its overall financial risk. The annual costs of these replacements are estimated at $850,674 which means a net estimated savings of $783,766 – annually - on facilities MassDOT currently has in place for these bonds and going out to the maturity of these facilities.   When MassDOT replaced 5 of these liquidity facilities last year, the annual savings was approximately $1.9 million.  As such, this exercise in conjunction with last year's 5 replacement facilities will yield more than $2.7 million in savings annually going forward until these facilities expire.

On motion duly made and seconded, it was

**VOTED:**

13

## RESOLUTION

WHEREAS, on April 10, 2010, the Massachusetts Department of Transportation (the "Department") issued its $92,845,000 Metropolitan Highway System Revenue Bonds (Subordinated), Commonwealth Contract Assistance Secured, Variable Rate Demand Obligations, 2010 Series A-3 (the "Series A-3 Bonds"), $92,845,000 Metropolitan Highway System Revenue Bonds (Subordinated), Commonwealth Contract Assistance Secured, Variable Rate Demand Obligations, 2010 Series A-6 (the "Series A-6 Bonds"), and $94,230,000 Metropolitan Highway System Revenue Bonds (Subordinated), Commonwealth Contract Assistance Secured, Variable Rate Demand Obligations, 2010 Series A-7 (the "Series A-7 Bonds") for the purpose of refinancing bonds previously issued by the Massachusetts Turnpike Authority, predecessor to the Department;

WHEREAS, the payment of principal of and interest on and the tender price of the Series A-3 Bonds is secured by a letter of credit (the "Series A-3 Letter of Credit") issued by Bank of America, N.A.;

WHEREAS, the payment of the tender price of the Series A-6 Bonds is secured by a standby bond purchase agreement (the "Series A-6 SBPA") issued by JP Morgan Chase Bank, N.A., ("JP Morgan"); and

WHEREAS, the payment of the tender price of the Series A-7 Bonds is secured by a standby bond purchase agreement (the "Series A-7 SBPA") issued by JP Morgan;

NOW, THEREFORE, BE IT RESOLVED by the members of the Board of the Department, pursuant to the Act, as follows:

Section 1. The Department hereby approves the substitution of a direct-pay letter of credit (the "Series A-3 Substitute Letter of Credit") to be provided by Landesbank Hessen- Thüringen Girozentrale, acting through its New York Branch ("Helaba") for the Series A-3 Letter of Credit, and the Department hereby authorizes the execution and delivery by any of the Chairman, the Secretary or Acting Secretary and Chief Executive Officer or the Assistant Secretary and Chief Financial Officer of the Department (each an "Authorized Officer"), acting singly, of (i) the reimbursement agreement between the Department and Helaba pursuant to which Helaba will issue the Series A-3 Substitute Letter of Credit in such form and otherwise containing such terms and conditions as any Authorized Officer, acting singly, shall determine to be appropriate, the execution of such reimbursement agreement by such Authorized Officer to be conclusive

evidence that the form and terms of such reimbursement agreement and the Series A- 3 Substitute Letter of Credit were deemed appropriate, and (ii) any other documents, certificates and other instruments which may be advisable, convenient or necessary to effect the substitution of the Series A-3 Substitute Letter of Credit for the Series A-3 Letter of Credit, including without limitation any fee letter agreement, offering memorandum or remarketing circular.

Section 2. The Department hereby approves the substitution of a standby letter of credit (the "Series A-6 Substitute Letter of Credit") to be provided by Sumitomo Mitsui Banking Corporation, acting through its New York Branch ("Sumitomo") for the Series A-6 SBPA, and the Department hereby authorizes the execution and delivery by any Authorized Officer, acting singly, of (i) the standby letter of credit and reimbursement agreement between the Department and Sumitomo pursuant to which Sumitomo will issue the Series A-6 Substitute Letter of Credit in such form and otherwise containing such terms and conditions as any Authorized Officer, acting singly, shall determine to be appropriate, the execution of such standby letter of credit and reimbursement agreement by such Authorized Officer to be conclusive evidence that the form and terms of such standby letter of credit and reimbursement agreement and the Series A-6 Substitute Letter of Credit were deemed appropriate, and (ii) any other documents, certificates and other instruments which may be advisable, convenient or necessary to effect the substitution of the Series A-6 Substitute Letter of Credit for the Series A-6 SBPA, including without limitation any fee letter agreement, offering memorandum or remarketing circular.

Section 3. The Department hereby approves the substitution of a standby bond purchase agreement (the "Series A-7 Substitute SBPA") to be provided by TD Bank, N.A. for the Series A-7 SBPA, and the Department hereby authorizes the execution and delivery by any Authorized Officer, acting singly, of (i) the Series A-7 Substitute SBPA in such form and otherwise containing such terms and conditions as any Authorized Officer, acting singly, shall determine to be appropriate, the execution of the Series A-7 Substitute SBPA by such Authorized Officer to be conclusive evidence that the form and terms of the Series A-7 Substitute SBPA were deemed appropriate, and (ii) any other documents, certificates and other instruments which may be advisable, convenient or necessary to effect the substitution of the Series A-7 Substitute SBPA for the Series A-7 SBPA, including without limitation any fee letter agreement, offering Memorandum or remarketing circular.

Section 4. Each Authorized Officer, acting singly, is hereby further authorized and directed to do all acts and things, and to execute and

**deliver any and all documents, certificates and other instruments necessary or desirable to effectuate the transactions contemplated by this vote.**

**Section 5. This resolution adopted on October 22, 2014 shall take effect immediately.**

The next item on the agenda presented by Administrator DePaola was the MassDOT AET Customer Service Center. The Administrator requested to remove this item from table.

On motion duly made and seconded, it was;

**VOTED: to remove MassDOT AET Customer Service Center item from the table.**

The Administrator requested the authorization to execute a ten year contract with TransCore L.P. in the amount of $205,060,000 for the purpose of developing and operating MassDOT's AET Customer Service Center in of support the future toll collection system. The Massachusetts Department of Transportation, Highway Division (MassDOT) is undertaking a project to convert and replace the Western Turnpike (Interstate Highway I-90) and the Metropolitan Highway System (MHS) interchange-based manual cash and electronic toll collection systems with a new system of mainline-based toll zones relying only on All Electronic Tolling (AET), as well as a new Back Office Customer Service Center (CSC) to support AET customer accounts.  The Project is comprised of the 124-mile Western Turnpike (Interstate Highway I-90) between the New York state line and Exit 14 in Weston; and the MHS which includes the urbanized part

of I-90 east of Exit 14 as well as the Sumner/Callahan Tunnels, the Ted Williams Tunnel, and the Tobin Bridge.  Toll collection under the new AET program will be based on transponder and license plate image processing for identification of vehicles.

On motion duly made and seconded, it was;

**VOTED: That the Secretary/CEO and/or Administrator for the Highway Division, be and hereby is, authorized to execute, in the name and on behalf of the Department, and in a form approved by General Counsel, a certain Highway Division Contract entitled, MassDOT AET Customer Service Center with TransCore, L.P., in an amount not to exceed of $205,060,000 based upon a schedule of unit prices and anticipated volumes, said contractor being the Best Value bidder in response to requests for sealed proposals.**

The next item on the agenda presented by Ed Hunter was the authorization to approve and execute MBTA Contract No. K78CN01 entitled SCR (South Coast Rail) Early Work Grade Crossing Improvement Project, Taunton, New Bedford and Freetown, Massachusetts with LM Heavy Civil Construction, LLC (LMH), for a sum not to exceed $18,367,000.00. In addition, requesting approval of the Intergovernmental Service Agreement (ISA) between MassDOT and the MBTA for $22,700,000.00 to fund this contract award, MBTA force account and MBTA related management and administrative costs. The duration of the $18,367,000.00 base contract award will be for thirteen (13) months from the date of the Notice to Proceed (NTP), contingent on securing the necessary funds from the Commonwealth of Massachusetts.

On motion duly made and seconded, it was

**VOTED: That, the Board of Directors hereby grants in the name and on behalf of the Authority, subject to the approval of the Massachusetts Department of Transportation (MassDOT), a construction contract award for MBTA Contract No. K78CN01, entitled "SCR Early Work, Grade Crossing Improvement Project, Taunton, New Bedford and Freetown, Massachusetts" with L.M. Heavy Civil Construction, LLC (LMH), for a sum not to exceed $18,367,000.00, based upon a schedule of lump sum and allowance bid prices, said contractor being the lowest responsible and eligible bidder in response to requests for sealed proposals; and further**

**VOTED: That the Board of Directors approve and authorize the Secretary and Chief Executive Officer, MassDOT, to execute an Intergovernmental Service Agreement (ISA) between the Massachusetts Department of Transportation (MassDOT), and the Massachusetts Bay Transportation Authority (MBTA) for $22. 7 Million to fund this contract award and MBTA related management and administrative costs. The duration of the base contract award will be for thirteen (13) months from the date of the Notice to Proceed, contingent on securing the necessary funds from the Commonwealth of Massachusetts. Correspondingly, this contract award is subject to pre-audit and finalization of cost negotiations.**

The next item presented Maryam Portnoy was approval of MBTA Local 600 Agreement. Ms. Portnoy asked the Board to approve enter into a collectively bargained agreement with Local 600 of the Office and Professional Employees International Union, AFL-CIO ("Local 600" or "Union") in the form of a Memorandum of Understanding ("MOU"). This MOU will establish the terms and conditions of the Union's successor Collective Bargaining Agreement. The term of the Agreement shall begin on July 1, 2010 and continue up to and including June 30, 2014. The Union represents approximately 300 Inspectors in Bus and Subway Operations who serve as the frontline transportation supervisors. The

Parties began negotiations on/about June 2011 over the terms and conditions of a successor Collective Bargaining Agreement to replace the contract that expired on June 30, 2010. After several formal negotiations and informal sessions the parties have reached a proposed agreement. The term of this Agreement shall be from July 1, 2010 through and including June 30, 2014. The total four year wage increase is 10% (10.4% when compounded) and is the same as the wage increases awarded to Local 589 in the Garraty Interest Arbitration. Local 600 was transferred into the Commonwealth's Group Insurance Commission ("GIC") on July 1, 2010. Increase the uniform voucher from $1.200 every two years to $1.350 every two years.

On motion duly made and seconded, it was

**VOTED: That the General Manager is hereby authorized to enter into a collectively bargained Agreement in the name and on behalf of the Authority, between the Massachusetts Bay Transportation Authority and Local 600 of the Office and Professional Employees International Union, AFL-CIO ("Union") relative to the terms and conditions of employment for a period commencing July 1,2010 through and including June 30, 2014, and the General Manager is authorized to execute said Agreement in the name and on behalf of the Authority upon ratification by the Union membership. Copy of said Agreement in the form submitted is hereby ordered filed with the records of the meeting.**

Next Ms. Portnoy presented the Local 600 Agreement for July 1, 2014 and continues up to and including June 30, 2018. The term of this Agreement shall be from July 1, 2014 through and including June 30, 2018. The total four year wage increase is 10% and is the same as the wage increases recently negotiated

between the Authority and Local 589 for the same contract term. The estimated

net cost of the entire proposed agreement with the Union is $1 1,783.701.

On motion duly made and seconded, it was;

**VOTED: That the General Manager is hereby authorized to enter into a collectively bargained Agreement in the name and on behalf of the Authority, between the Massachusetts Bay Transportation Authority and Local 600 of the Office and Professional Employees International Union, AFL-CIO ("Union") relative to the terms and conditions of employment for a period commencing July 1, 2014 through and including June 30, 2018, and the General Manager is authorized to execute said Agreement in the name and on behalf of the Authority upon ratification by the Union membership. Copy of said Agreement in the form submitted is hereby ordered filed with the records of the meeting.**

The next item on the agenda was MBTA Local 105 Labor Agreement

presented by Noel Richardson. Mr. Richardson asked the Board to approve a

collectively bargained agreement with the International Federation of

Professional and Technical Engineers, Local Union 105 in the form of a

Memorandum of Understanding ("MOU"). This MOU will establish the terms and

conditions of a new, successor collective bargaining Agreement. The term of the

agreement shall begin on July 1, 2011 and continue up to and including June 30,

2015. The International Federation of Professional and Technical Engineers,

Local Union 105, currently represents 123 Engineers and Construction

Inspectors. The Parties began negotiations on/about March 1, 2012 over the

terms and conditions of a successor Collective Bargaining Agreement to replace

the contract that expired on June 30, 2011. The parties have reached a proposed

agreement, the highlights of which are outlined below. The term of this Agreement shall be from July 1, 2011 through and including June 30, 2015. The total four year wage increase is 10% (l 0.4% when compounded) and is the same as the wage increases awarded to Local 589 in the Garraty Interest Arbitration. Employees who regularly work the night shift will be paid a differential of $1.50 per hour for all hours worked. This is an increase from the current differential of $0.75 and is consistent with Lodge 264, Local 104 and other unions. The Parties agreed to adjust the current mileage allowance so that the rate is consistent with the Authority's Travel Policy (currently $0.45). Consistent with Chapter 25 of the Acts of 2009, as amended (Transportation Reform), all contract provisions relating to health and life insurance are deleted. The estimated net cost of the entire proposed agreement with the Union is $3,374,395. This Agreement represents the most cost-effective settlement available to the Authority for this Union. Therefore, it is recommended that the Board of Directors accept this proposed settlement and authorize the General Manager to enter into a collectively bargained Agreement with Local 105.

On motion duly made and seconded, it was

**VOTED: That the General Manager is hereby authorized to enter into a collectively bargained Agreement in the name and on behalf of the Authority, between the Massachusetts Bay Transportation Authority and the International Federation of Professional and Technical Engineers, Local Union 105 ("Union") relative to the terms and conditions of employment for a period commencing July 1,2015 through and including June 30, 2019, and the General Manager is authorized to execute said Agreement in the name and on behalf of the Authority upon ratification by the Union membership. Copy of**

**said Agreement in the form submitted is hereby ordered filed with the records of the meeting.**

Next Mr. Richardson presented collectively bargained agreement with the Local Union 105 agreement for the term of July 1, 2015 and continues up to and including June 30, 2019. The total four year wage increase is 10% (10.4% when compounded) and is the same as the wage increases recently negotiated between the Authority and Local 589. The Parties agreed to amend the current wage progression from 13 years to 10 years for Engineers. The Union agreed to give up the contract provision that provides six weeks of vacation after 31 years of service for employees hired after July 1, 2015. The estimated net cost of the entire proposed agreement with the Union is $3,898,077.

On motion duly made and seconded, it was

**VOTED: That the General Manager is hereby authorized to enter into a collectively bargained Agreement in the name and on behalf of the Authority, between the Massachusetts Bay Transportation Authority and Local 600 of the Office and Professional Employees International Union, AFL-CIO ("Union") relative to the terms and conditions of employment tor a period commencing July 1, 2014 through and including June 30, 2018, and the General Manager is authorized to execute said Agreement in the name and on behalf of the Authority upon ratification by the Union membership. Copy of said Agreement in the form submitted is hereby ordered filed with the records of the meeting.**

Chairman Jenkins announced that they were going into executive session to discuss a personnel update and safety and security emergency preparedness and we will not be going into open session.

On motion duly made and seconded, it was

**VOTED**:   To adjourn.

Documents used for this reports
Administrator Willenborg Report
Power Point for RMV
MassDOT Performance and Accountability Report
Staff Summaries from 7-15.