# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HYUNDAI ROTEM COMPANY,

              Plaintiff,

BOMBARDIER TRANSIT CORPORATION,

              Intervenor-Plaintiff,

      v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY, *et al.*,

              Defendants.

**Civil Action No. 1:15-cv-10132-FDS**

---

## INTERVENOR-PLAINTIFF BOMBARDIER'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS BY MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND CNR MA CORPORATION

**Leave to File Memo of Law in Excess of L.R. 7.1 Page Limit Granted on March 5, 2015**

*Respectfully submitted,*

George C. Rockas, BBO # 544009
Erik J. Tomberg, BBO# 669413
Wilson Elser Moskowitz Edelman & Dicker LLP
260 Franklin Street, 14th Floor
Boston, Massachusetts 02110-3112
(617) 422-5300

Thomas W. Tobin, admitted *pro hac vice*
Daniel M. Braude, admitted *pro hac vice*
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

STATEMENT OF FACTS ...........................................................................3

THE *FRESENIUS* TWO-PRONG TEST ...................................................4

CNR'S MOTION TO DISMISS ...................................................................6

ARGUMENT

    **I.**    **THE MBTA HAS NEVER BEEN GRANTED ELEVENTH AMENDMENT IMMUNITY** .................................................................................7

        A. Both Federal and Massachusetts Courts Confirmed <u>Before 2009</u> that the MBTA is Not an "Arm of the State" .......................................7

        B. The MBTA Has Submitted to Diversity Jurisdiction <u>After 2009</u>, Including in a Matter Pending before the Hon. Dennis F. Saylor, IV ...................8

        C. The Attorney General of Massachusetts Confirmed <u>in 2010</u> that the MBTA Does Not Enjoy Eleventh Amendment Immunity ...................8

        D. The Hon. Richard G. Stearns of the District of Massachusetts Denied an Eleventh Amendment Immunity Motion by the MBTA <u>in 2011</u> ...........9

    **II.**    **THE 2009 TRANSPORTATION REFORM ACT DID NOT CONVERT THE MBTA INTO AN "ARM OF THE STATE"** ..........................................10

        A. The Reform Act Did Not Modify the MBTA's Status as an "Independent Agency," "A Body Politic and Corporate," and "A Political Subdivision" ..........11

        B. The Reform Act Provides the MassDOT Board and the Governor the Same Powers Enjoyed by the <u>MBTA Board</u> and the Governor Before 2009 ................14

        C. The "Jurisdiction" Granted to MassDOT by the Reform Act is Limited to "Planning and Programming" Activities and Even Extends to Municipalities and Privately Owned Street Railways in Addition to the MBTA .........................17

        D. "Public Employer" Status for the Massachusetts Tort Claims Act Does Not Equate to a Grant of Sovereign Immunity ......................................19

    **III.**    **THE COMMONWEALTH'S VOLUNTARY CONTRIBUTIONS DO NOT CREATE AN OBLIGATION TO PAY THE MBTA'S DEBTS** ............................20

    **IV.**    **ABSTENTION IS NOT WARRANTED** ...................................................23

CONCLUSION ......................................................................................24

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)...........................................................................23

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007)................................. 21-22

*Brennan v. Casco Bay Island Transit Dist.*, 539 F. Supp. 2d 439 (D. Me. 2008) ........................18

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).............................................................................24

*Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20 (1st Cir. 2011) ...........................23

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976)......................23

*Commonwealth v. Twitchell*, 416 Mass. 114 (1993)....................................................................13

*Cooper v. SEPTA*, 548 F.3d 296 (3d Cir. Pa. 2008) .......................................................... 18, 21-22

*Febres v. Camden Bd. of Educ.*, 445 F.3d 227 (3d Cir. 2006).................................................. 21-22

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. N.J. 1989) ......... 20-21

*Fragoso v. Lopez*, 991 F.2d 878 (1st Cir. 1993) ...........................................................................23

*Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and The Caribbean Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir. 2003).....................4, 6, 9, 20, 21

*Gallo v. Essex County Sheriff's Department*, 2011 WL 1155385 (D.Mass 2011) ........................10

*Geshke v. Crocs v. Mass. Bay Transp. Auth.*, No. 10-11567-RGS (D. Mass. 2010)................9, 19

*Gibson-Homans Co. v. N.J. Transit Corp.*, 560 F. Supp. 110 (D.N.J. 1982) ...............................20

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)........................................ 4-5, 21

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 888 F.2d 940 (1st Cir. 1989) ........................... 5-6

*Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593 (1968) ................................................. 23-24

*Lake Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979) ...................... 12-13

*Lawson-Velez v. Mass. Bay Transp. Auth.*, No. 1:11-cv-11652-RBC (D. Mass.)..........................8

*Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996) .............................................18

*Massachusetts Bay Transp. Auth. v. Rocla Concrete Tie, Inc.*, No. 1:10-cv-10917-DPW (D. Mass.).....................................................................................................................................8

*Michaeledes v. Golden Gate Bridge, Highway & Transp. Dist.*, 202 F. Supp. 2d 1109 (N.D. Cal. 2002)........................................................................................................................18

*Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ......................................................24

*Morrison-Knudsen Co. Inc. v. Massachusetts Bay Transp. Auth.*, 573 F. Supp. 698 (D. Idaho 1983) .............................................................................................................................7

*Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280-281 (1977)..................................22

*Murphy v. Town of Natick*, 516 F. Supp. 2d 153 (D. Mass. 2007) ..................................11

*Nat'l Ass'n of Gov't Employees v. Mulligan*, 849 F. Supp. 2d 167 (D. Mass. 2012)...................24

*O'Brien v. Massachusetts Bay Transp. Auth.*, 162 F.3d 40 (1st Cir. 1998) ................................5-6

*Okongwu v. Stephens*, 396 Mass. 724 (1986) .............................................................11

*Pastrana-Torres v. Corporacion De Puerto Rico Para La Difusion PUBLICA*, 460 F.3d 124 (1st Cir. 2006) ..............................................................................................................5

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, No. 06-40211-FDS, 697 F. Supp. 2d 213 (D. Mass. 2010).............................................................................................................8

*Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1894)...................................................24

*Redondo Construction Corp. v. Puerto Rico Highway and Transp. Auth.*, 357 F. 3d 124 (1st Cir. 2004)................................................................................5, 12, 17-18, 20

*Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425 (1997) ...............................................6

*Surprenant v. Massachusetts Turnpike Auth.*, No. 09-10428-RGS (D. Mass.) ..............................8

*Surprenant v. Massachusetts Turnpike Auth.*, 768 F.Supp.2d 312 (D. Mass. 2011) ......................9

*University of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir.1993)..................................24

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir. 1990)...........................24

*Williams v. Dallas Area Rapid Transit*, 242 F.3d 315 (5th Cir. 2001)........................................18

*Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92 (1st Cir. 2002) ..............................................6

## Massachusetts Cases

*Bennett v. Massachusetts Bay Transp. Auth.*, No. SUCV1993-01409, 1998 WL 52245, at *2 (Mass. Super. Feb. 2, 1998) .....................................................................................7

*Karlin v. Mass. Turnpike Authority*, 399 Mass. 765 (Mass. 1987)........................................7

*Lavecchia v. Mass. Bay Transp. Auth.*, 441 Mass. 240 (Mass. 2004) ..........................................19

*Wong v. Univ. of Mass.*, 438 Mass. 29 (Mass. 2002)....................................................19

**Massachusetts Statutes**

G.L. ch. 6C, § 1 ...................................................................................................3, 11, 18

G.L. ch. 6C, § 2 ...................................................................................................3, 4, 14

G.L. ch. 6C, § 4 ............................................................................................................18

G.L. ch. 6C, § 10 ..........................................................................................................18

G.L. ch. 6C, § 15 ....................................................................................................11, 18

G.L. ch. 6C, § 18 ............................................................................................11, 13, 18

G.L. ch. 6C, § 30 ...................................................................................................4, 17-18

G.L. ch. 29, § 1 .............................................................................................................11

G.L. ch. 161 .................................................................................................................18

G.L. ch. 161A, § 1 .........................................................................................................4

G.L. ch. 161A, § 1 (Effective: July 1, 2000 to June 30, 2009) ....................................15

G.L. ch. 161A, § 2 ...................................................................................................3, 12

G.L. ch. 161A, § 3 .................................................................................................4, 16-17

G.L. ch. 161A, § 5 .........................................................................................................22

G.L. ch. 161A, § 6 (Effective: to June 30, 2000) .........................................................14

G.L. ch. 161A, § 7 ...............................................................................................4, 14-15, 17

G.L. ch. 161A, § 7 (Effective: July 1, 2000 to October 31, 2009) ..........................14-15

G.L. ch. 161A, § 7 (Effective: November 1, 2009 to August 8, 2012) .........................14

G.L. ch. 161A § 21 (codified at § 38 from July 1, 2000 to June 30, 2009) ..............19-20

G.L. ch. 161B .................................................................................................................18

G.L. ch. 258, § 1 ...........................................................................................................20

## INTRODUCTION

The MBTA asks this Court to hold that the MBTA is an "arm of the Commonwealth" and is therefore entitled to sovereign immunity under the Eleventh Amendment. On the same basis, the MBTA claims that this Court does not have diversity jurisdiction because the MBTA is not a citizen of Massachusetts. The Massachusetts legislature, however, maintained the MBTA's status as an "Independent Agency" when enacting the "comprehensive" 2009 Transportation Reform Act on which the MBTA relies. The success or failure of the MBTA's jurisdictional motion to dismiss hinges entirely upon whether the Reform Act converted the MBTA from an independent agency into an "arm of the Commonwealth." The Act simply did not do this:

| **The MBTA Before 2009** | **The MBTA Today** |
|---|---|
| • Board of Directors Appointed by Governor | • Board of Directors Appointed by Governor |
| • Removal of Directors for Cause | • Removal of Directors for Cause |
| • **18** Enumerated Powers of Board | • **19** Enumerated Powers of Board |
| • Independent Agency, Body Politic & Corporate, and a Political Subdivision | • Independent Agency, Body Politic & Corporate, and a Political Subdivision |
| • Not Represented by Attorney General | • Not Represented by Attorney General |
| • Limits on tort claims against the MBTA | • Limits on tort claims against the MBTA |
| *One Additional Power of the Board – No Other Changes* | |

The MBTA claims that the Reform Act subjected it to authority of a board of directors appointed by the governor and vested the board with ability to exercise the MBTA's 19 enumerated powers. However, the MBTA maintained its own Board of Directors, members of which were also appointed by the governor, until 2012. The reform characterized by the MBTA as "comprehensive" merely provided the Board of Directors the additional power to issue identification cards to MBTA police officers. Furthermore, MassDOT's "jurisdiction" under the

Reform Act pertains to administrative "planning and programming," and covers not only the MBTA, but also other regional transit authorities and privately owned street railways.

Invoking the protections of the Eleventh Amendment triggers a well-established two-prong test in the First Circuit.  First, the Court must conduct a "structural inquiry" that asks whether the entity is structured to enjoy sovereign immunity, either explicitly or implicitly.  Only if this inquiry is inconclusive does the Court reach the second inquiry, which asks whether the state's treasury would be at risk in the event of an adverse judgment.   In the case at bar, there is no need to reach the secondary "tiebreaker" inquiry.  The legislature's determination to maintain the MBTA as an "Independent Agency" when enacting the Reform Act plainly confirms the absence of "an intention--either explicitly by statute or implicitly through the structure of the entity--that the entity share the state's sovereign immunity."  Even if the Court were to reach the secondary inquiry, the Commonwealth's voluntary contributions to the MBTA do not amount to a duty to pay the MBTA's debts or to be responsible for an adverse judgment in this matter.

No court has *ever* held that the MBTA is an "arm of the state," either before or after 2009.  In fact, in this very court the Hon. Richard G. Stearns denied an Eleventh Amendment immunity motion brought by the MBTA in 2011 on the same grounds presented here.  The Massachusetts Attorney General actually used the MBTA as an example of an agency that is independent of the state and therefore not entitled to Eleventh Amendment immunity in a 2010 brief filed in this court on behalf of MassDOT.  Declining to grant the MBTA Eleventh Amendment immunity, and finding it a citizen of Massachusetts for purposes of diversity jurisdiction, would be consistent with the decisions of Federal and Massachusetts courts, **both before and after 2009**.

The MBTA's motion disregards established precedent and the Attorney General's legal representations.  It instead advances arguments that are unsupported by both the facts and law.

There are no grounds to deviate from the only conclusion that courts have ever reached on this subject: the MBTA is not an "arm of the state" and is therefore not entitled to sovereign immunity under the Eleventh Amendment.

## STATEMENT OF FACTS

Following a Request for Proposals ("RFP") issued on October 22, 2013 for the manufacture and delivery of up to 284 new Orange and Red Line vehicles, Intervenor-Plaintiff Bombardier Transit Corporation ("Bombardier"), Plaintiff Hyundai Rotem Corporation ("HRC"), CNR MA Corporation ("CNR"), and others submitted bids to the MBTA. *See* Bombardier First Amended Complaint, ¶ 5. On October 22, 2014, the Contract was awarded to CNR. *Id.* at ¶ 62. Bombardier, HRC, and Kawasaki Rail Car, Inc. ("Kawasaki") each filed administrative protests with the MBTA. *Id.* at ¶ 3. Through the present civil action, Bombardier requests appropriate declaratory and injunctive relief against the MBTA requiring it to vacate the current procurement and re-initiate the bid process.

In its motion to dismiss, the MBTA focuses on the 2009 Transportation Reform Act (the "Reform Act"), which reorganized certain entities under the newly created Massachusetts Department of Transportation ("MassDOT"). The Reform Act, however, did not change the nature of the MBTA's relationship to the Commonwealth. In all material respects the MBTA's structure and independent status has remained the same. As before the Reform Act, the MBTA is defined as an "independent agency," G.L. ch. 6C, § 1, which has the "power to hold property [and] to sue and be sued…." G.L. ch. 6C, § 2. Critically, the MBTA's enabling legislation was not altered by the Reform Act. G.L. ch. 161A, § 2. Contrary to the MBTA's suggestion, the Reform Act did not for the first time make the MBTA subject to authority of directors appointed by the Governor. In fact, the MBTA maintained its own board of directors, members of which

were also appointed by the governor, until August 8, 2012.  See G.L. ch. 6C, § 2(b) and (c) (Effective: August 9, 2012); G.L. ch. 161A, § 7 (Effective: August 9, 2012 and Effective: July 1, 2000 to October 31, 2009) and Chart, infra, Sec. II.B.  Neither did the Reform Act impose any material changes to the enumerated powers enjoyed by the MBTA's governing board or the Governor.

What the MBTA describes in its brief as "comprehensive" reform provided the MBTA's governing board a single additional power—the ability to issue identification cards to MBTA police officers—while the other 18 enumerated powers remain untouched.  *See* G.L. ch. 161A, § 3, and Chart, *infra*, Sec. II.B.  Likewise, the Governor's ability to appoint Board members, and remove them for cause, remains the same.  *See* G.L. ch. 6C, § 2(b), and Chart, *infra*, Sec. II.B. While the MBTA is "within the jurisdiction" of MassDOT, that jurisdiction is restricted to the administrative realm of "planning and programming."  G.L. ch. 6C, §30(b).  The same statute defines the MBTA as a "regional transportation authorit[y]," an apt term for an independent agency that serves the local interests of certain cities and towns in the greater Boston region, as opposed to a state-wide agency.  G.L. ch. 161A, §§ 1, 3(k).  Finally, the Reform Act does not obligate the Commonwealth to pay the MBTA's debts.  The Reform Act makes no changes that transform the MBTA from independent authority into an arm of the state.

### THE *FRESENIUS* TWO-PRONG TEST

The First Circuit "reformulated its arm-of-the-state analysis for Eleventh Amendment immunity in response to intervening Supreme Court precedent" when it set forth a two-part test for sovereign immunity in *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and The Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 64 (1st Cir. 2003); see *Hess*

*v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 33 (1994) (denying Eleventh Amendment immunity to regional commuter railroad authority).

The first, and potentially dispositive, inquiry under *Fresenius* is "whether the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity." *Redondo Construction Corp. v. Puerto Rico Highway and Transp. Auth.*, 357 F. 3d 124, 126 (1st Cir. 2004). The state's intentions may be established implicitly by means of the entity's structure, powers, limitations, and relationship to the state. *Id*. at 126-128. Only if this structural inquiry is inconclusive does the court advance to the second test, that being to consider "whether the state's treasury would be at risk in the event of an adverse judgment." *Id*. at 126. This second step has been relegated to the position of a tiebreaker where the first step fails to inform. If the first step establishes that "the state has structured the entity to share its Eleventh Amendment immunity," then "immunity applies" and there is no need to consider "the risk that money damages will be paid from the state's treasury if the entity is found liable." *See Pastrana-Torres v. Corporacion De Puerto Rico Para La Difusion PUBLICA*, 460 F.3d 124, 126 (1st Cir. 2006).

The MBTA makes little mention of *Fresenius*. It instead focuses on the First Circuit's decisions in *O'Brien v. Massachusetts Bay Transp. Auth.*, 162 F.3d 40 (1st Cir. 1998) and *In re San Juan Dupont Plaza Hotel Fire Litig.*, 888 F.2d 940 (1st Cir. 1989). These decisions are easily distinguishable. The MBTA relies on *O'Brien* for the proposition that "[i]t is not the proper purview of a federal court to supervise state officials' compliance with state law." *Id.* at 44. However, *O'Brien* involved a question of federal preemption related to the MBTA's drug and alcohol testing policy and fails entirely to mention the Eleventh Amendment, let alone base

its decision on a sovereign immunity analysis.[1]  The MBTA does not assert a preemption

argument here, and its reliance on *O'Brien* should be disregarded.

San Juan Dupont, cited by the MBTA on no fewer than half a dozen pages of its

Memorandum of Law, involved a public tourism company that existed as a non-profit entity

charged with promoting tourism.  In contrast to the MBTA (an "independent agency"), the

tourism company is officially defined as an "instrumentality of the Government of Puerto Rico,"

thereby demonstrating a clear intent to designate the entity as "an arm of the state." *Id*. at 944.

As with *O'Brien*, this case fails to support the MBTA's arguments and should be disregarded.

"[T]he entity asserting Eleventh Amendment immunity[] bears the burden of showing it

is an arm of the state….  [W]hether [the entity] is an arm of the Commonwealth and entitled to

share its Eleventh Amendment immunity is a question of federal law." *Fresenius*, 322 F.3d at

64; citing *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 99 (1st Cir. 2002); *Regents of the*

*Univ. of Cal. v. Doe,* 519 U.S. 425, 429 n. 5 (1997).

## CNR'S MOTION TO DISMISS

Bombardier has not asserted a claim against CNR.  However, CNR has directed its

Motion to Dismiss at both Bombardier and Plaintiff HRC.  CNR adopts the arguments set forth

by the MBTA and asserts that if the MBTA is dismissed, then CNR must be dismissed as well.

CNR's independent arguments related to the present jurisdictional dispute are therefore rendered

moot in the event this Court has jurisdiction over the MBTA.  In this opposition, Bombardier

responds directly to the arguments asserted by the MBTA and respectfully requests that this

Honorable Court deny CNR's Motion to Dismiss for the same reasons set forth as to the

MBTA's Motion to Dismiss.

---

[1]     *See MBTA's Memo.*, p. 15 ("In *O'Brien*, the First Circuit Court of Appeals held that *the Eleventh Amendment* prohibited plaintiffs from obtaining injunctive relief…") (emphasis added), and p. 14 n. 12.

## ARGUMENT

**I.    THE MBTA HAS NEVER BEEN GRANTED ELEVENTH AMENDMENT IMMUNITY**

The MBTA fails to cite to even a single example of a court deeming it "an arm of the Commonwealth" or otherwise finding it to have Eleventh Amendment immunity.  This is not surprising: both federal and Massachusetts courts have unanimously concluded that the MBTA is not an arm of the Commonwealth.  The MBTA seeks to overturn current precedent based on the 2009 reorganization of the MBTA under MassDOT.  However, federal courts since 2009 have continued to subject the MBTA to jurisdiction—including in a 2011 decision in the District of Massachusetts that rejects the very same argument advocated here.  Granting the MBTA's motion to dismiss would require an unprecedented decision that runs directly counter to the existing and well-reasoned string of court opinions.

**A.  Both Federal and Massachusetts Courts Confirmed <u>Before 2009</u> that the MBTA is Not an "Arm of the State"**

The only published federal court decision on point held that the MBTA "failed to establish that [it] is a dependent arm of the Commonwealth" as it "serves a local interest and engages in the business of transportation, which traditionally has been the province of the private sector."  *Morrison-Knudsen Co. Inc. v. Mass. Bay Transp. Auth.*, 573 F. Supp. 698, 705 (D. Idaho 1983).  The Massachusetts Supreme Judicial Court cited to this decision in 1987 for the proposition that the "MBTA is not an arm of the Commonwealth immune from suit under the Eleventh Amendment to the United States Constitution."  *Karlin v. Mass. Turnpike Authority*, 399 Mass. 765, 767 (Mass. 1987).  In 1998 the Massachusetts Superior Court followed suit by confirming that the "MBTA lacks Eleventh Amendment immunity."  *Bennett v. Massachusetts Bay Transp. Auth.*, No. SUCV1993-01409, 1998 WL 52245, at *2 (Mass. Super. Feb. 2, 1998).

**B. The MBTA Has Submitted to Diversity Jurisdiction <u>After 2009</u>, Including in a Matter Pending before the Hon. Dennis F. Saylor, IV**

Despite enactment of the Reform Act, the MBTA has submitted to federal jurisdiction based on diversity of citizenship on multiple occasions after 2009. It did not contest removal to federal court based on diversity jurisdiction in a 2010 case arising out of a contract dispute following a public bidding process for the procurement of materials and contractors. *Massachusetts Bay Transp. Auth. v. Rocla Concrete Tie, Inc.*, No. 1:10-cv-10917-DPW (D. Mass.). The following year, the MBTA did not dispute jurisdiction in another federal action based on diversity jurisdiction. *Lawson-Velez v. Mass. Bay Transp. Auth.*, No. 1:11-cv-11652-RBC (D. Mass.). Most notably, the MBTA submitted to diversity jurisdiction before this very Court despite the previous year's enactment of the Reform Act. *See CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, No. 06-40211-FDS, 697 F. Supp. 2d 213 (D. Mass. 2010) (Saylor, J.).

**C. The Attorney General of Massachusetts Confirmed <u>in 2010</u> that the MBTA Does Not Enjoy Eleventh Amendment Immunity**

In a 2010 brief filed on behalf of the Commonwealth in the District of Massachusetts, the Massachusetts Attorney General pointed to the MBTA as an entity that the legislature chose to keep independent and thus not entitled to Eleventh Amendment immunity. In *Surprenant v. Massachusetts Turnpike Auth.*, No. 09-10428-RGS (D. Mass.), the Attorney General, representing MassDOT stated:

> By contrast [to MassDOT], the transportation-related entities that the Legislature chose to keep independent have been placed outside the Department. ***These include the Massachusetts Bay Transportation Authority***[]; the Massachusetts Port Authority; the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority; and the regional transit authorities. *See* Mass. G.L. c. 6C, § 1.

*See* Memo. in Supp. of Defs.' Motion for Judgment on the Pleadings on the Grounds that Plaintiffs' Claims are Barred by the Eleventh Amendment, 09-cv-10428, ECF 80, p. 12 (Sept.

27, 2010) (emphasis added).[2]  The Attorney General explained that "[w]hile [MassDOT] has certain coordinating responsibilities that affect the Massachusetts Bay Transportation Authority, … the Authority operates independently."  *Id.* at 12 n. 4; citing to G.L. ch. 6C, § 53.

The MBTA's motion to dismiss seeks a ruling that runs contrary to the clear position of the Massachusetts Attorney General—the very office charged with representing the interests of the Commonwealth's "departments" in all civil proceedings.  *See* G.L. ch. 12, § 3.  Notably, the Attorney General does not appear for MBTA in this action, suggesting in and of itself that the MBTA is independent of the Commonwealth.

### D. The Hon. Richard G. Stearns of the District of Massachusetts Denied an Eleventh Amendment Immunity Motion by the MBTA <u>in 2011</u>

The MBTA's brief fails to comment on a 2011 ruling in which it lost a motion to dismiss based on the same Eleventh Amendment argument asserted here.  In *Geshke v. Crocs v. Massachusetts Bay Transp. Auth.*, No. 10-11567-RGS (D. Mass. 2010), the MBTA claimed it was entitled to sovereign immunity under the Eleventh Amendment by virtue of MassDOT's 2009 reorganization.  *See* MBTA's Memo. of Law in Supp. of Motion to Dismiss, pp. 1-2, ECF Doc. 32 (June 28, 2011) (noting that the incident forming the basis for jurisdiction "occurred on July 29, 2010, *after* the MBTA became … part of MassDOT…." (emphasis in original)).

In denying the MBTA's motion, the Hon. Richard G. Stearns held that "[t]he MBTA has failed to meet its burden of demonstrating that it is an arm of the state for purposes of the Eleventh Amendment."  *See Geshke*, No. 10-11567-RGS, 8/10/11 Order.  Relying upon the test set forth by the First Circuit in *Fresenius*, and after considering the MBTA's arguments under the Reform Act and the Massachusetts Tort Claims Act, Judge Stearns concluded: "In its motion,

---

[2]  *See* Exhibit 1 to Affidavit of Thomas W. Tobin, dated March 6, 2015 ("Tobin Affidavit.")  The resulting decision from the district court did not directly address the MBTA's status under the Eleventh Amendment.  *See Surprenant v. Massachusetts Turnpike Auth.*, 768 F.Supp.2d 312 (D. Mass. 2011)

the MBTA simply asserts immunity to suit under the Eleventh Amendment based upon 2009 legislation that reorganized certain state entities under the Massachusetts Department of Transportation.  Without more, the court cannot undertake the analysis set out above."  *Id.*

Every court to consider the instant issue, **both before and after 2009**, has declined to grant the MBTA immunity under the Eleventh Amendment.  At least one court even held up the MBTA as an example of an entity that does not have Eleventh Amendment immunity.  In a 2011 decision, the Hon. Douglas P. Woodlock held that a sheriff's department was entitled to Eleventh Amendment immunity because it did not have "the features of independence possessed by the MBTA…."  See *Gallo v. Essex County Sheriff's Department*, 2011 WL 1155385 (D.Mass 2011). Consistent with the conclusions of federal courts, Massachusetts state courts, and the Massachusetts Attorney General, this Court should deny the MBTA's motion to dismiss.

## II.     THE 2009 TRANSPORTATION REFORM ACT DID NOT CONVERT THE MBTA INTO AN "ARM OF THE STATE"

The MBTA's motion to dismiss hinges on the assertion that the 2009 Transportation Reform Act altered the nature of the MBTA's relationship to the Commonwealth such that the MBTA has now become an "arm of the state."  The MBTA fails to recognize the distinction between changes in form versus substance.

The MBTA claims that the Reform Act created a board of directors to exercise the MBTA's 19 enumerated powers, granted the Governor the ability to appoint board members, permits the Governor to remove board members for cause, and placed the MBTA "within the jurisdiction" of MassDOT.  The MBTA failed to explain that this "jurisdiction" is limited to "planning and programming" or to address the MBTA's pre-2009 structure.  Prior to the Reform Act, the MBTA Board also consisted of members appointed by the Governor that could be removed for cause and enjoyed nearly identical governing authority over the MBTA as does the

10

current MassDOT Board.  The Reform Act simply did not convert the MBTA from an independent agency into an "arm of the state."

### A. The Reform Act Did Not Modify the MBTA's Status as an "Independent Agency," "A Body Politic and Corporate," and "A Political Subdivision"

Before the 2009 Transportation Reform Act, the MBTA existed as "an independent political entity and not an agency of the Commonwealth...."  *Okongwu v. Stephens*, 396 Mass. 724, 730-731 (1986); see *Murphy v. Town of Natick*, 516 F. Supp. 2d 153 (D. Mass. 2007).[3]

Today, the MBTA remains an independent agency as explicitly defined by the Reform Act:

> "**Independent agencies**", shall include, but not be limited to, the **Massachusetts Bay Transportation Authority**, the Massachusetts Port Authority, the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and the regional transit authorities established in chapter 161B.

G.L. ch. 6C, § 1. Definition.  (Emphasis added.)  In addition, the Reform Act explicitly relieves the MBTA from MassDOT's obligation to "operate as a state agency[4] … subject to the provisions applicable to agencies under the control of the governor..." and denies it the privilege of having the office of the attorney general appear on its behalf in suits and civil proceedings. See G.L. ch. 6C, § 15. State Agency Status; G.L. ch. 6C, § 18 suits and civil proceedings.  In stark contrast, the Massachusetts Turnpike Authority did not enjoy the same fate:

> The Transportation Reform Act provided for the dissolution of the Massachusetts Turnpike Authority and the transfer of its assets, liabilities, obligations and debt, including debt outstanding under its trust agreements, to MassDOT.  MassDOT assumed the rights, powers and duties of the Authority effective November 1, 2009 in accordance with the Transportation Reform Act.

---

[3]   In a 2003 appellate brief to the Supreme Judicial Court addressing the right to a trial by jury in a fully adjudicated discrimination claim, the MBTA made the following assertion: "**Among Bodies Politic And Corporate, The MBTA *Is Particularly Independent*.**"  *MBTA v. Ross*, Brief of Plaintiff-Appellant Massachusetts Bay Transportation Authority, 2003 WL 23282366 (June 27, 2003) (emphasis in original).

[4]   "State Agency" is defined as "a legal entity of state government established by the General Court as an agency, board, bureau, department, office or division of the commonwealth with a specific mission, which may either report to cabinet-level units of government, known as executive offices or secretariats, or be independent divisions or departments."  G.L. ch. 29, § 1. Definitions.

*Debt Issuance and Management Policy*, Massachusetts Dept. of Transp., March 12, 2014.[5]

As with the Turnpike Authority, the legislature could have dissolved the MBTA and transferred "its assets, liabilities, obligations and debt … to MassDOT" and assign to MassDOT the MBTA's "rights, powers and duties." But it chose not to. The legislature also could have placed the MBTA's enabling statutes alongside MassDOT's statutes within Title II, "Executive and Administrative Officers of the Commonwealth." But instead it chose to leave the provisions of ch. 161A under Title XXII, "Corporations" alongside municipalities and private corporations. Furthermore, the legislature has specifically defined the MBTA as an "Independent Agency." As noted above, this demonstrates that the legislature did not indicate "an intention--either explicitly by statute or implicitly through the structure of the entity--that the entity share the state's sovereign immunity." *Redondo*, 357 F.3d at 126. Nor does the legislature's choice to maintain the *status quo* with regard to the MBTA's enabling legislation demonstrate such intent:

| <u>**Before**</u> **2009 Reform Act** | <u>**After**</u> **2009 Reform Act** |
|---|---|
| **G.L. ch. 161A, § 2. Authority Made Political Subdivision of State; General Powers; Liabilities; Process** ||
| The area constituting the authority and the inhabitants thereof are hereby made a body politic and corporate, and a political subdivision of the commonwealth, under the name of Massachusetts Bay Transportation Authority. **The authority shall have power to hold property, to sue and be sued in law and equity and to prosecute and defend all actions relating to its property and affairs. The authority shall be liable for its debts and obligations, but the property of the authority shall not be subject to attachment nor levied upon by execution or otherwise.** Process may be served upon the treasurer of the authority or, in the absence of the treasurer, upon any member of the board. (Emphasis added.) | The area constituting the authority and the inhabitants thereof are hereby made a body politic and corporate, and a political subdivision of the commonwealth, under the name of Massachusetts Bay Transportation Authority. **The authority shall have power to hold property, to sue and be sued in law and equity and to prosecute and defend all actions relating to its property and affairs. The authority shall be liable for its debts and obligations, but the property of the authority shall not be subject to attachment nor levied upon by execution or otherwise.** Process may be served upon the treasurer of the authority or, in the absence of the treasurer, upon any member of the board. (Emphasis added.) |
| ***No Change by Reform Act*** ||

The fact that the legislature did not alter the MBTA's status as a "political subdivision" indicates that it did not intend to confer the protections of the Eleventh Amendment. *See Lake*

---

[5]   Appended as Exhibit 2 to Tobin Affidavit.

*Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400-401 (1979) (Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions …, even though such entities exercise a 'slice of state power'").

The legislature's intent to distinguish the MBTA from MassDOT is apparent elsewhere in G.L. ch. 6C.  Notably, § 18 provides that the Massachusetts Attorney General shall represent MassDOT in civil actions but explicitly excludes the MBTA: "The office of the attorney general shall appear for the department, its divisions, departments, agencies and officers, **but not including the Massachusetts Bay Transportation Authority**, … in all suits and other civil proceedings in which the department is a party or interested…."  (emphasis added).  This is significant given that the Attorney General is the Commonwealth's "chief law officer … with the power to set a unified and consistent legal policy…."  *Commonwealth v. Twitchell*, 416 Mass. 114, 129 (1993).  The fact that the MBTA is *not* represented by the Attorney General in litigation clearly indicates the legislature's intent that it be treated as independent from both MassDOT and the Commonwealth.  Consistent with this analysis, G.L. ch. 6C, § 18 concludes as follows:

> The department and its divisions, departments and agencies, **but not including the Massachusetts Bay Transportation Authority**, … shall be generally considered to be an agency of the commonwealth for purposes of: (i) said chapter 12 [pertaining to the Attorney General]; (ii) any general or special law pertaining to judicial remedies or procedures; and (iii) court rules and standing orders….  (Emphasis added).

The MBTA is *not* an agency of the Commonwealth for purposes of "any general or special law pertaining to judicial remedies or procedures," or for "court rules and standing orders."  If the legislature had intended to incorporate the MBTA into MassDOT or the Commonwealth to that extent, it would have omitted these terms.  The only reasonable reading of G.L. ch. 6C, **both before 2009 and after 2009**, is that the MBTA is an independent agency that is not an arm of the Commonwealth.

13

### B. The Reform Act Provides the MassDOT Board and the Governor the Same Powers Enjoyed by the <u>MBTA Board</u> and the Governor Before 2009

The MBTA asserts that creation of the MassDOT Board somehow diminished the MBTA's independence from the Governor and the Commonwealth such that the MBTA became an "arm of the state." Contrary to the MBTA's suggestion, the Reform Act did not for the first time make the MBTA subject to authority of a board of directors appointed by the Governor. In fact, the MBTA maintained its own board, members of which were also appointed by the governor, until August 8, 2012. Regardless, the current structure has been in place all along:

| MBTA Board <u>Until August 8, 2012</u> | MassDOT Board <u>After August 8, 2012</u> |
|---|---|
| Between five and nine board members, including the secretary of the executive office of transportation and construction. | Seven board members, including the secretary of transportation. |
| Board members appointed by governor. | Board members appointed by governor. |
| Any director, except the chairperson, may be removed for cause by the governor. | Any director may be removed from his appointment by the governor for cause (but secretary serves ex officio). |
| No more than three of five (or five of nine) directors shall be members of the same political party. | Not more than 4 of the directors, except the secretary, shall be members of the same political party. |
| To fill a vacancy, a successor shall be named in the same manner and serve for the remainder of the term. | To fill a vacancy, a successor shall be named in the same manner and serve for the remainder of the term. |
| A majority shall constitute a quorum, but a majority vote of the entire membership of the board of directors shall be required to take any particular action. | A majority shall constitute a quorum. The affirmative vote of a majority shall be necessary for any action to be taken by the board. |

***No Material Change by Reform Act (or other legislation)***

*See* G.L. ch. 6C, § 2(b) and (c). Massachusetts Department of Transportation (Effective: August 9, 2012)
  G.L. ch. 161A, § 7. Board of Directors; Members; Meetings (Effective: August 9, 2012)
  G.L. ch. 161A, § 7. Board of Directors (Effective: July 1, 2000 to October 31, 2009)
  G.L. ch. 161A, § 7. Board of Directors (Effective: November 1, 2009 to August 8, 2012)
  G.L. ch. 161A, § 6. Board of Directors (Effective: to June 30, 2000)

From July 1, 2000 to October 31, 2009, the MBTA was managed by a board of nine directors who were appointed by the governor and subject to removal for cause. From November 1, 2009 to August 8, 2012, the MBTA was governed by a board of five directors who were appointed by the governor and subject to removal for cause. As of August 9, 2012, the MBTA is governed by a board of nine directors who were appointed by the governor and subject

to removal for cause.  Effective August 9, 2012, the MBTA's enabling legislation referring to its

board of directors was altered by simply referring to Chapter 6C of MassDOT's enabling

legislation.  This was a change in form, not substance, as the board essentially renamed itself:

| **MBTA** | **MINUTES** |
|---|---|
| **BOARD MEETING OF AUGUST 8, 2012** | **MassDOT BOARD MEETING OF SEPTEMBER 12, 2012** |
| At the call of the Chair, a meeting of the Board of Directors of the Massachusetts Bay Transportation Authority was held at Gloucester City Hall, Kyrouz Auditorium, 9 Dale Avenue, Gloucester, MA on Wednesday, August 8, 2012 at 1:00 p.m. | At the call of the Chair, a Meeting of the Board of Directors of the Massachusetts Department of Transportation was held at the Aldermanic Chamber, Somerville City Hall, 93 Highland Avenue, Somerville, MA on Wednesday, September 12, 2012. |
| There were present: Messrs. Jenkins, Alvaro, Whittle and the Misses Levin and Loux, being a quorum of the Board. | There were present:  Messrs. Jenkins, Davey, Alvaro, Whittle, Bonfiglio, Macdonald and Miss Loux, being the Board of Directors of the Massachusetts Department of Transportation. |
| Also in attendance were: the Secretary, Mr. Davey, the Acting General | |

*See* Exhibits 3 and 4 to Tobin Affidavit.

A comparison of the August 8, 2012 and September 12, 2012 meeting minutes indicates

that four of the MBTA Board's five members began serving on the MassDOT Board

immediately after the current version of G.L. ch. 161A, § 7 went into effect.  This further

confirms the non-substantive nature of this change.[6]

As with the MBTA's governing structure, the Reform Act did not alter the MBTA

powers exercised by the applicable Board of Directors.  The MBTA asserts that the "19

[enumerated] powers of the MBTA … exercised by the board of directors" is a product of the

"comprehensive reform and modernization of the Commonwealth's public transportation

system" caused by the Reform Act.  In reality, the only change in substance affecting the

MBTA's corporate powers involves issuing identification cards to MBTA police officers:

---

[6]   The Secretary of Transportation was not a member of the MBTA Board.  Prior to the Reform Act, this role was filled by the Secretary of the Executive Office of Transportation and Construction who served as a member of the MBTA Board ex officio.  See G.L. ch. 161A, § 7. Board of Directors (Effective: July 1, 2000 to October 31, 2009); G.L. ch. 161A, § 1. Definitions (Effective: July 1, 2000 to June 30, 2009).

| **_Before_ 2009 Reform Act** | **_After_ 2009 Reform Act** |
|---|---|
| **G.L. ch. 161A, § 3. Additional powers of authority** | |

| | |
|---|---|
| "In addition to all powers otherwise granted to the authority by law, the authority shall have the following powers, in each case to be exercised by the board unless otherwise specifically provided:" | "In addition to all powers otherwise granted to the authority by law, the authority shall have the following powers, in each case to be exercised by the board unless otherwise specifically provided:" |
| (a)  To adopt and use a corporate seal…. | (a)  To adopt and use a corporate seal…. |
| (b)  To establish within the area constituting the authority a principal office and such other offices…. | (b)  To establish within the area constituting the authority a principal office and such other offices…. |
| (c)  To hold, operate and manage the mass transportation facilities and equipment…. | (c)  To hold, operate and manage the mass transportation facilities and equipment…. |
| (d)  To appoint and employ officers…. | (d)  To appoint and employ officers…. |
| (e)  To make, and from time to time revise and repeal, by-laws, rules, regulations and resolutions. | (e)  To make, and from time to time revise and repeal, by-laws, rules, regulations and resolutions. |
| (f)  To enter into agreements with other parties…. | (f)  To enter into agreements with other parties…. |
| (g)  To establish transit facilities [and] infrastructure…. | (g)  To establish transit facilities [and] infrastructure…. |
| (h)  To accept [conditional] gifts, grants and loans from agencies of local, state and federal governments.... | (h)  To accept [conditional] gifts, grants and loans from agencies of local, state and federal governments.... |
| (i)  To provide mass transportation service…. | (i)  To provide mass transportation service…. |
| (j)  To operate mass transportation facilities…. | (j)  To operate mass transportation facilities…. |
| (k)  To provide for construction, extension, modification or improvement of … facilities…. | (k)  To provide for construction, extension, modification or improvement of … facilities…. |
| (*l*)  [T] o conduct research, surveys, experimentation, evaluation, design and development…. | (*l*)  [T] o conduct research, surveys, experimentation, evaluation, design and development…. |
| (m) To grant such easements over any real property…. | (m) To grant such easements over any real property…. |
| (n)  To sell, lease or otherwise contract for advertising in or on the facilities of the authority. | (n)  To sell, lease or otherwise contract for advertising in or on the facilities of the authority. |
| (*o*)  To take real property by eminent domain…. | (*o*)  To take real property by eminent domain…. |
| (p)  To issue bonds…. | (p)  To issue bonds…. |
| (q)  [S]uch other powers, including the power to buy, sell, lease, pledge [real and personal property].... | (q)  [S]uch other powers, including the power to buy, sell, lease, pledge [real and personal property].... |
| (r)  The authority may enter into contracts or agreements with the department[7] or with any agency, authority or political subdivision…. | (r)  The authority may enter into contracts or agreements with the department or with any agency, authority or political subdivision…. |
| | **(s)  To issue to every full-time [MBTA] police officer … an identification card….** |
| ***Reform Act Added (s) – No Other Changes*** (*See* Exhibit 5 to Tobin Affidavit) | |

In support of its argument, the MBTA explains as follows:

> Massachusetts law prohibited the MBTA from entering into the CNR
> contract without prior approval by the DOT Board. *See* G.L. c. 161A, §§

---

[7]    The Reform Act modified the definition of "Department" from "the executive office of transportation and construction" to "the mass transit division within the department of transportation."  The "mass transit division" is an "administrative unit" within MassDOT's Office of Planning and Programming.  G.L. ch. 6C, § 29(b).

3, 3(f) (MBTA's power "to enter into agreements with other parties, including . . . for the . . . use of any mass transportation facility and equipment held or later acquired by the authority," must "in each case . . . be exercised by the [DOT] board . . ."). *See also id.* § 7 (MBTA "shall be governed and its corporate powers exercised by the board of directors of the [DOT]").

This explanation is correct. However, it fails to support the MBTA's claim that the Reform Act somehow resulted in sweeping change that caused the MBTA to become an "arm of the state." Replacing each reference to "DOT Board" with "MBTA Board" perfectly describes the approval process involving the MBTA Board prior to the Reform Act.

The responsibilities of the MassDOT Board naturally extend beyond the MBTA. But as to the MBTA, the legislature granted it authority to exercise identical powers (aside from issuing police identification cards) as the MBTA Board prior to 2009. The legislature's modifications in form to the structure and authorized powers of the MBTA's governing board hardly indicate "an intention--either explicitly by statute or implicitly through the structure of the entity--that the entity share the state's sovereign immunity." *Redondo*, 357 F.3d at 126.

## C. The "Jurisdiction" Granted to MassDOT by the Reform Act is Limited to "Planning and Programming" Activities and Even Extends to Municipalities and Privately Owned Street Railways in Addition to the MBTA

The MBTA's memorandum of law repeatedly asserts that the MBTA is "within the jurisdiction" of MassDOT in an attempt to show that the MBTA enjoys less independence today than it did prior to the Reform Act. This is a compelling argument until one considers that this "jurisdiction" pertains strictly to planning and programming activities.

MassDOT is granted "jurisdiction" over the MBTA pursuant to G.L. ch. 6C, § 30, titled "Office of Planning and Programming -- Functions." This statute pertains to transportation policies, planning and programs, obtaining administrative efficiencies, and coordinating infrastructure and security. The most relevant portion of this section provides as follows:

> The Massachusetts Bay Transportation Authority, the Massachusetts
> Turnpike Authority[8] and any regional transportation authorities
> established under chapter 161 or 161B shall also be within the jurisdiction
> of the department.

G.L. ch. 6C, § 30(b). The MBTA's suggestion that this "jurisdiction" weighs in favor of it being

deemed an "arm of the state" is clearly misguided when considering that authorities established

under chapters 161 and 161B are also subject to MassDOT's "jurisdiction."

Chapter 161 of the General Laws governs Street Railways and therefore places private

corporations "within the jurisdiction" of MassDOT.  Chapter 161B governs regional transit

authorities and therefore places transit authorities created by local municipalities "within the

jurisdiction" of MassDOT.  The MBTA certainly does not assert that private street railcar

corporations or municipal entities such as the Brockton Area Transit Authority or the Cape Ann

Transit Authority share the Commonwealth's sovereign immunity.  Furthermore, one would not

expect MassDOT to define the MBTA as a "Regional Transit Authority" alongside 15 other

Regional Transit Authorities if it did not intend to treat it as a "Regional Transit Authority."[9]

Regardless, the legislature's placement of the MBTA "within the jurisdiction" of MassDOT for

"planning and programming" functions indicates nothing more than a desire to treat the MBTA

just like a local municipality or even a private corporation.[10]

---

[8]     Considering that the Massachusetts Turnpike Authority was dissolved in 2009, it appears that this is a
scrivener's error.  The legislature may have intended to refer to the Massachusetts Port Authority which is
referenced alongside the MBTA and regional transit authorities elsewhere in MassDOT's enabling legislation.
*See* G.L. ch. 6C, §§ 1, 4, 10, 15, 18.

[9]     *See* http://www.massdot.state.ma.us/transit/RegionalTransitAuthorities.aspx (Exhibit 6 to Tobin Affidavit)

[10]    Courts routinely deny sovereign immunity to regional transportation authorities. *E.g. Redondo*, 357 F.3d at 128
(First Circuit holding Puerto Rico Highway and Transp. Authority was not an "arm of the state"); *Cooper v.
Southeastern Pennsylvania Transp. Authority*, 548 F.3d 296, 311 (3d Cir. 2008) (SEPTA is not an "arm of
the state"); *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 322 (5th Cir. 2001) (denying Eleventh
Amendment immunity ); *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 296-297 (2d Cir. 1996) (Thruway
Authority not entitled to Eleventh Amendment immunity); *Brennan v. Casco Bay Island Transit Dist.*, 539 F.
Supp. 2d 439, 443 (D. Me. 2008) (commercial ferry service was not an "arm of the state"); *Michaeledes v.
Golden Gate Bridge, Highway & Transp. Dist.*, 202 F. Supp. 2d 1109, 1112-1113 (N.D. Cal. 2002) (despite tort
claims act status as a "public entity," transportation district was not an "arm of the state").

**D.** **"Public Employer" Status for the Massachusetts Tort Claims Act Does Not Equate to a Grant of Sovereign Immunity**

The MBTA claims that being defined as a "public employer" under the Massachusetts Tort Claims Act equates to a grant of sovereign immunity.  This exact argument was previously made by the MBTA and rejected by the Hon. Richard G. Stearns in *Geshke v. Crocs v. Massachusetts Bay Transp. Auth.*, No. 10-11567-RGS (D. Mass. 2010).

The MBTA mistakenly suggests that the law treated the MBTA as a private corporation with respect to tort liability until it became a "public employer" in 2009.  In reality, the legislature has always placed limits on claims in tort that could be brought against the MBTA. The Supreme Judicial Court explained as follows:

> In 1964, prompted by the imminent failure of several private street railway companies and the availability of Federal mass transit aid…, the Legislature created the MBTA as "a body politic and corporate and a political subdivision of the commonwealth," to "operate, in the public interest, commuter railroads, rapid transit, buses, street-cars and any other forms of mass transportation."  …  **From its inception, the MBTA was subject to tort liability governed by a two-year statute of limitations. Inclusion of a liability provision in the MBTA enabling statute was significant because, without such a provision the MBTA, as a State entity, would have been immune from tort actions under the then prevailing law of sovereign immunity.**  Apparently, the Legislature wanted the public to retain the right to bring tort actions against the MBTA to the extent that such a right previously had been available against private railway and streetcar companies.

*Lavecchia v. Mass. Bay Transp. Auth.*, 441 Mass. 240, 243-244 (Mass. 2004) (citing to *Wong v. Univ. of Mass.*, 438 Mass. 29 (Mass. 2002); remaining citations omitted) (emphasis added).

As explained in *Wong*, the legislature enacted the Massachusetts Tort Claims Act in 1978 in response to a 1977 Supreme Judicial Court decision which announced that it would abrogate sovereign immunity as to tort claims against the Commonwealth unless the legislature acted to permit such claims.  The MBTA was already amenable to tort claims pursuant to G.L. ch. 161A § 21 (codified at § 38 from July 1, 2000 to June 30, 2009) which required commencement of

claims for personal injury or property damage within two years.  It was therefore unnecessary for the MBTA to be included in the definition of "public employer" at that time.

Receiving "public employer" status merely changed the degree to which the MBTA is amenable to tort claims.  Notably, the MBTA's fellow "public employers" include municipalities ("any county, city, town") and regional transit authorities, entities which indisputably do not receive Eleventh Amendment immunity in federal court.  *See* G.L. ch. 258, § 1. Definitions.

In sum, the legislature's modification of the MBTA's amenability to suit in tort does not demonstrate "an intention--either explicitly by statute or implicitly through the structure of the entity--that the entity share the state's sovereign immunity."  *Redondo*, 357 F.3d at 126.

## III.   THE COMMONWEALTH'S VOLUNTARY CONTRIBUTIONS DO NOT CREATE AN OBLIGATION TO PAY THE MBTA'S DEBTS

Under the First Circuit's *Fresenius* test, a court reaches the question of "whether the state's treasury would be at risk in the event of an adverse judgment" only where there is "ambiguity" with regard to the entity's structural inquiry.  *Fresenius*, 322 F.3d at 66.  As set forth above, there is little doubt that the legislature has failed to indicate "an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity."  *Redondo*, 357 F. 3d at 126.  Even so, the Commonwealth's voluntary contributions to the MBTA do not create an obligation to pay the MBTA's debts.

The MBTA claims it is entitled to Eleventh Amendment immunity because the Commonwealth funded the Contract and, in theory, might contribute additional funds if the MBTA contracts with a bidder other than CNR.  In support of its argument, the MBTA points to a District of New Jersey decision that addressed funding of New Jersey Transit.  See *Gibson-Homans Co. v. N.J. Transit Corp.*, 560 F. Supp. 110, 113 (D.N.J. 1982).  The MBTA apparently overlooked a subsequent Third Circuit decision: "Although New Jersey might appropriate funds

to NJT to meet any shortfall caused by judgments against NJT, such voluntary payments by a state do not trigger sovereign immunity." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 661 (3d Cir. N.J. 1989). Moreover, the MBTA confuses voluntary contributions by the Commonwealth with an obligation to pay a judgment or as a result of indebtedness. As explained by the Supreme Court, the impetus for the Eleventh Amendment is preventing the payment of "federal-court judgments … out of a State's treasury." *Hess*, 513 U.S. at 48. In quoting *Hess*, the First Circuit further explained:

> "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No' -- both legally and practically -- then the Eleventh Amendment's core concern is not implicated."

*Fresenius*, 322 F.3d at 72; quoting *Hess*, 513 U.S. at 51.

The MBTA concedes, rightfully so, that the Commonwealth would not have a legal obligation to pay additional funds if the MBTA contracted with a bidder other than CNR. The issue then turns to whether the Commonwealth would be "practically" obligated to "pay the resulting indebtedness." But the MBTA fails to address the distinction between an actual obligation and a voluntary or discretionary subsidy. The Third Circuit has explained as follows:

> [I]if a State is not under a legal obligation to satisfy a judgment, then any increase in expenditures in the face of an adverse judgment is considered a voluntary or discretionary subsidy not entitled to Eleventh Amendment protections…. In view of the controlling Supreme Court jurisprudence, as well as our own conforming case law, we find that the practical or indirect financial effects of a judgment may enter a court's calculus, but rarely have significant bearing on a determination of an entity's status as an arm of the state.
> …
> [I]f the Commonwealth of Pennsylvania fails to cover a deficit, the Southeastern Pennsylvania Transportation Authority (SEPTA) can satisfy the deficit itself by raising fares, reducing service, and/or laying off employees. The Commonwealth may choose to relieve SEPTA of these measures, but it is not obligated -- through risk of losing its own funding or its own property -- to do so.
> …

> [T]he state's potential legal liability is the 'key factor' under the state treasury prong of immunity analysis and 'merits far greater weight' than practical consequences.

*Cooper v. SEPTA*, 548 F.3d 296, 304-306 (3d Cir. Pa. 2008); quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 547 (3d Cir. 2007); *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 236 (3d Cir. 2006) (internal quotations omitted).

The Commonwealth is not obligated to fund the MBTA's purchase of new Red and Orange Line vehicles, let alone exactly 284 new vehicles.  As explained in *Cooper*, the MBTA could generate funds by "raising fares, reducing service, and/or laying off employees." Likewise, the MBTA could issue bonds.  *See Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280-281 (1977) (political subdivision's "extensive powers to issue bonds" among factors indicating it was not an "arm of the state").  The Commonwealth "may choose to relieve [the MBTA] of these measures, but it is not obligated -- through risk of losing its own funding or its own property -- to do so."  *Cooper,* 548 F.3d at 305.

The MBTA asserts that its budget is subject to "substantial oversight" by the Governor, the Commonwealth, and MassDOT pursuant to G.L. ch. 161A, § 5(h), and that during the current fiscal year "57% of its estimated revenue derived from State contributions."  As with the statutes addressed above, G.L. ch. 161A, § 5(h) exists today as it did prior to the Reform Act.  Regarding funding, the MBTA has conceded that its current structure is typical of transportation authorities:

> The MBTA is no different from its peers, in that it is financed by a combination of system generated revenues and subsidies….  The MBTA, like its peers, [as of 2007 was] financed by system generated revenues (37%) and subsidies (63%).[11]

Once again, as discussed above, there was no relevant change from before 2009 to after 2009.

---

[11]    "BORN BROKE: How the MBTA found itself with too much debt, the corrosive effects of this debt, and a comparison of the T's deficit to its peers," MBTA Advisory Board, April 2009.  (Exhibit 7 to Tobin Affidavit).  Also see http://www.mbta.com/about_the_mbta/history/default.asp?id=966 (explaining that historically "the railroads were annually subsidized….").

The MBTA's Memorandum of Law Section II.B.1.b is titled "A judgment for HRC would directly impact the public fisc." The MBTA appears to have omitted Bombardier from this sub-heading because the relief requested by Bombardier is a re-bid of the Contract which would not necessarily cause the MBTA to incur any costs above its current contract with CNR.[12] Even so, the Commonwealth's long history of providing subsidies to the MBTA and willingness to provide ongoing financial support does not create an obligation to provide a certain amount of funding in the event the MBTA is forced to re-bid the Contract. Plain and simple, an adverse judgment would not place the Commonwealth's treasury at risk.

## IV.   ABSTENTION IS NOT WARRANTED

As a last-ditch effort at avoiding federal jurisdiction, the MBTA urges this Court to abstain from hearing this case on the grounds that the complaints raise "novel questions of State law that directly bear on the Commonwealth's public transportation policy, a matter of pressing public concern." *See MBTA's Memo.*, pp. 18-19. However, the Supreme Court has dictated that jurisdiction may be declined only in "exceptional circumstances." *Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011). The First Circuit has "repeatedly emphasized that abstention must always be 'the exception, not the rule.'" *Id.* (quoting *Fragoso v. Lopez*, 991 F.2d 878, 882 (1st Cir. 1993)). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).

---

[12]   As alleged by Bombardier, the MBTA failed to proceed with the customary Best and Final Offer ("BAFO") stage of the procurement in order to seek reduced proposals from the bidders. The MBTA's references to Bombardier's initial Price Proposal disingenuously suggest that this was a final proposal that would not have been reduced during the BAFO stage.

In support of its claim, the MBTA cites to *Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593 (1968), in which the Supreme Court endorsed abstention where the "crucial issue" was the definition of "public use" in the New Mexico Constitution and a separate declaratory judgment suit regarding the same issue was simultaneously pending in state court. *Id.* at 593-594. *Kaiser* is inapplicable to the present case. This matter does not involve the interpretation of the state constitution and does not risk conflicting with any currently pending state court actions. Similarly, there are no grounds for invoking the doctrine of *Burford* abstention, which is encouraged where a district court's "review … would interfere with a state's ability to conduct centralized regulatory policymaking." *Nat'l Ass'n of Gov't Employees v. Mulligan*, 849 F. Supp. 2d 167, 174 (D. Mass. 2012) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

As discussed throughout this brief, the MBTA is a regional transit authority that does not direct the Commonwealth's centralized public transportation policy. The assortment of factors offered by the MBTA—including the involvement of state law issues—does not rise to the level of "exceptional circumstances" warranting abstention. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir. 1990) ("the presence of state law issues weighs in favor of surrender [of jurisdiction] only in 'rare circumstances'") (citation omitted). In line with its "virtually unflagging obligation ... to exercise … jurisdiction," this Court should not abstain from exercising jurisdiction.

## CONCLUSION

It is settled law that a state is not a "citizen" under § 1332. E.g., *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894); *University of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1202 (1st Cir.1993). A political subdivision of a state, however, is presumed a citizen of the state for federal diversity jurisdiction

purposes unless it operates as "the arm or alter ego of the State." *Moor*, 411 U.S. at 717.  For the reasons set forth above, the MBTA is not "the arm or alter ego" of the Commonwealth.

In light of the foregoing, Intervenor-Plaintiff  Bombardier Transit Corporation respectfully requests that this Honorable Court deny the MBTA's and CNR's Motions to Dismiss.

Dated:  March 6, 2015

Respectfully submitted,

**BOMBARDIER TRANSIT CORPORATION**

By its attorneys:

/s/ Thomas W. Tobin

George C. Rockas, BBO # 544009
George.Rockas@wilsonelser.com
Erik J. Tomberg, BBO# 669413
Erik.Tomberg@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
260 Franklin Street, 14th Floor
Boston, Massachusetts 02110-3112
(617) 422-5300

Thomas W. Tobin, admitted *pro hac vice*
Thomas.Tobin@wilsonelser.com
Daniel M. Braude, admitted *pro hac vice*
Daniel.Braude@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of March 2015, the above document was filed via the Court's ECF system, which will distribute a copy of the document to all counsel of record, and paper copies will be sent to those indicated as non-registered participants

Dated:      March 6, 2015

/s/ Thomas W. Tobin
Thomas W. Tobin