**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

HYUNDAI ROTEM COMPANY,

Plaintiff,

BOMBARDIER TRANSIT CORPORATION,

Intervenor-Plaintiff,

v.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, et al.

Defendants.

No. 15-CV-10132-FDS

**REPLY BRIEF IN SUPPORT OF**
**CNR MA CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINTS OF HYUNDAI ROTEM COMPANY AND BOMBARDIER TRANSIT CORPORATION FOR DECLARATORY AND INJUNCTIVE RELIEF**[1]

CNR files this reply brief to address a single question: what happens if the Court determines that the MBTA is *not* protected by sovereign immunity? The answer is that dismissal of HRC's and Bombardier's claims is nevertheless warranted under O'Brien v. Massachusetts Bay Transportation Authority, 162 F.3d 40 (1st Cir. 1998) ("*O'Brien*"). As in *O'Brien*, HRC and Bombardier have not stated claims that are cognizable in this forum.

[1] All capitalized terms used herein have the same meanings given to those terms in CNR's Motion to Dismiss papers.

## ARGUMENT

### I. Dismissal is Warranted Under *O'Brien* Regardless of the Court's Resolution of the Sovereign Immunity Question.

In its initial moving papers, and in its reply brief, the MBTA sets forth compelling reasons demonstrating that it is protected by sovereign immunity in light of the 2009 reorganization of the Commonwealth's transportation agencies under the Transportation Reform Act and the 2012 amendment to that legislation.[2] If the Court determines that the MBTA is protected by sovereign immunity, then it is not a "citizen" of any state for purposes of diversity jurisdiction, the Court lacks subject matter jurisdiction, and the action must be dismissed.

However, even if the Court determines that the MBTA is *not* protected by sovereign immunity, the Court should nevertheless dismiss HRC's and Bombardier's claims under established principles of abstention and comity. The rule – applied by the First Circuit with respect to the MBTA – is that the federal courts do not sit to tell state actors how to conform their conduct to state law; "[i]t is not the proper purview of a federal court to supervise state officials' compliance with state law." *O'Brien*, 162 F.3d at 44 (citing, among others, Pennhurst State Sch. & Hops. V. Halderman, 465 U.S. 89, 106 (1984) ("*Pennhurst*")); see also Commonwealth v. Bartlett, 266 F. Supp. 390, 393 (D. Mass. 1967). Where, as here, a plaintiff seeks to enjoin a state actor from violating state law, "that is a decision for [the state] to make, not one for a federal court to impose." *O'Brien*, 162 F.3d at 44 (cross-referencing Missouri v. Jenkins, 495 U.S. 33, 50-51 (1990) (holding that a federal court's order for a local tax increase violated principles of comity)).

Neither HRC nor Bombardier alleges any violation of any federal law. And since both parties assert jurisdiction on the basis of diversity, Massachusetts law applies. See, e.g.,

[2] CNR adopts and incorporates MBTA's reply brief as if set forth fully herein.

Genereux v. Raytheon Co., 754 F.3d 51, 54 (1st Cir. 2014) ("Because this suit was brought in diversity jurisdiction . . . state law supplies the substantive rules of decision.") (citations omitted); see also HRC Amended Complaint, ¶ 8; Bombardier Amended Complaint, ¶ 9. Indeed, HRC and Bombardier both claim that the MBTA violated Massachusetts law, and ask the Court to issue declaratory, injunctive and/or equitable relief solely on that basis:

**HRC Amended Complaint, ¶ 2**:

"2. The procurement process was deeply and fundamentally flawed because the MBTA failed to put the bidders on equal footing, made arbitrary and capricious decisions, failed to adhere to the terms of the bid documents or do minimum due diligence of CNR, failed to select a bidder serving the public interest, and acted corruptly and in bad faith, all in violation of various public bidding laws and related case law, including but not limited to Mass. Gen. Laws ch. 30, § 39M, and applicable precedents (the "Bidding Laws")."

**HRC Amended Complaint – Count I (Declaratory Judgment)**:

"159. Pursuant to 28 U.S.C. § 2201, the Court should declare as a matter of law that (a) the MBTA violated the Bidding Laws and the implied contract by awarding the Contract to CNR; (b) CNR is neither a responsible nor eligible bidder under the Bidding Laws; and (c) HRC is the lowest responsible and eligible bidder and is entitled to the award of the Contract."[3]

**HRC Amended Complaint – Count II (Injunctive Relief)**:

"161. HRC has suffered and will in the future continue to suffer irreparable harm if the MBTA and CNR continue to violate their obligations under the Bidding Laws."

---

[3] The federal Declaratory Judgment Act does not confer federal subject matter jurisdiction. See Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995) ("The [federal Declaratory Judgment] Act does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis.") (citation omitted). In addition, while CNR disputes that M.G.L. c. 30, § 39M applies to the procurement at issue here, this is the Massachusetts "Bidding Law" which HRC alleges was violated.

**<u>HRC Amended Complaint – Count III (Violation of M.G.L. c. 66, § 10)</u>**:

"166. As a result of the foregoing, HRC is entitled to a temporary restraining order and, after hearing, a preliminary and permanent injunction requiring the MBTA to comply with its obligations under the Public Records Law and to produce all documents, in whatever form or format, that are responsive to HRC's public records requests."

**<u>HRC Amended Complaint – Count IV (Violation of M.G.L. c. 93A, § 11) and Prayer for Relief (d)</u>**:

"(d) Under Count IV, enter a preliminary and permanent injunction enjoining CNR from taking any actions whatsoever or to proceed with the Contract or, if the Court does not grant injunctive relief, award any and all damages to which HRC is entitled including all lost profits, all as may be ascertained at trial, which damages should be trebled pursuant to the Massachusetts Unfair Trade Practices Act, plus interest thereon; . . . ."

**<u>Bombardier Amended Complaint, ¶ 2 & n. 3</u>**:

"2. The procurement process was deeply and fundamentally flawed because the MBTA failed to put bidders on equal footing, made arbitrary and capricious decisions, failed to adhere to the terms of the bid documents or do minimum due diligence of CNR, all in violation of applicable Massachusetts procurement laws and precedents." (citing, in footnote 3, to "Best Value" procurement method under 801 C.M.R. 21.01).[4]

**<u>Bombardier Amended Complaint – Count I (Declaratory Judgment)</u>**:

"92. Pursuant to 28 U.S.C. § 2201, the Court should declare as a matter of law that the MBTA violated applicable procurement laws and the implied contract by awarding the Contract to CNR and that CNR is neither a responsible nor eligible bidder under the applicable procurement laws."

**<u>Bombardier Amended Complaint – Count II (Injunctive Relief)</u>**:

"94. Bombardier has suffered and will continue to suffer irreparable harm if the MBTA continues to violate its obligations under the applicable procurement laws."

As *O'Brien* instructs, these types of claims are "not properly cognizable" in this forum. <u>See</u> *O'Brien*, 162 F.2d at 45.

Importantly, the First Circuit in *O'Brien* did not perform the type of sovereign immunity analysis outlined in cases like *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.* and

[4] Unlike HRC, Bombardier does not contend that M.G.L. c. 30, § 39M applies. However, 801 C.M.R. 21.01 is equally inapplicable to the procurement at issue here.

*Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico* when it refused to enjoin the MBTA from allegedly violating Massachusetts law.[5] Contrast *O'Brien*, 162 F.2d at 44-45 with Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939-40 (1st Cir. 1993) and Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico, 322 F.3d 56, 60-68 (1st Cir. 2003). The *O'Brien* Court was well aware of the MBTA's status as a "political subdivision" of the Commonwealth and acknowledged that the MBTA had removed the case to federal court. See *O'Brien*, 162 F.3d at 41-42. Thus, the *O'Brien* Court could have addressed the plaintiff's state law claims on the merits, on grounds that the MBTA was either not protected by sovereign immunity or waived its sovereign immunity by removing the case to federal court. Cf., e.g., Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (stating that sovereign immunity extends to "arms of the state" but generally does not extend to municipal corporations or other political subdivisions) (citations omitted); Lapides v. Bd. of Regents, 535 U.S. 613, 624 (2002) (holding that state's action in removing case to federal court waived Eleventh Amendment immunity). The First Circuit did not follow either course.

Instead, the Court in *O'Brien* followed the Supreme Court's approach in *Pennhurst* and declined the plaintiff's "invitation to enjoin state officials (those who manage the MBTA) from acting in a manner that allegedly contravenes state law." *O'Brien*, 162, F.3d at 44. This result

---

[5] The Supreme Court's *Pennhurst* decision, quoted by the First Circuit in *O'Brien*, discussed sovereign immunity at length. So, while basic sovereign immunity principles might have been implicit in the *O'Brien* decision, the First Circuit did not analyze sovereign immunity directly and did not state, one way or the other, whether the MBTA was protected by sovereign immunity. Notably, the *Pennhurst* court also concluded that, even if sovereign immunity did not protect the defendant county officials, the exercise of pendent jurisdiction would not be appropriate because any judgment against the county officials (whose programs were funded entirely by the state) would be partial and incomplete at best. See *Pennhurst*, 465 U.S. at 123-124. The same is true here. As explained by the MBTA, any judgment against the MBTA (which is principally funded by the Commonwealth) would have a direct impact on the Massachusetts public fisc and would effectively amount to a judgment against the Commonwealth.

was wholly consistent with the Supreme Court's observation in *Pennhurst* that "a federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of the federal law." *Pennhurst*, 465 U.S. at 106. It is also consistent with this Court's prior exercise of discretion, declining to pass on state law questions concerning the MBTA. See Commonwealth v. Bartlett, 266 F. Supp. 390 (D. Mass. 1967) ("As a matter of discretion this court should refrain from passing on these questions and let them remain for determination in a proper proceeding by the courts of the state."). Therefore, even if sovereign immunity does not require dismissal, principles of abstention and comity underlying the result in *O'Brien* do. Cf. *O'Brien*, 162 F.2d at 44 (citing Missouri v. Jenkins, 495 U.S. at 50-51 (concluding that district court abused its discretion by imposing increase in tax levied by school district; doing so "contravened [] principles of comity")).

Regardless of how this Court resolves the sovereign immunity question, the fact remains that the First Circuit has expressly declined to do what HRC and Bombardier ask the Court to do in this case: issue injunctive relief against the MBTA for alleged violations of Massachusetts law. Neither HRC nor Bombardier has articulated any principled reason why the Court should depart from the result in *O'Brien* to reach a different result here.[6]

## CONCLUSION

Dismissal of the MBTA would resolve this action in its entirety. HRC has stated that, if the MBTA is dismissed, HRC will not pursue any claims solely against CNR in this Court. See Opposition of Hyundai Rotem Company to Defendant CNR MA Corp.'s Motion to Dismiss, p.

[6] HRC addresses *O'Brien* once, in footnote 3 of its memorandum of law. Bombardier also addresses *O'Brien* briefly at pages 5-6 of its memorandum of law, but – like HRC – does not attempt to explain why this Court should reach a different result than the one reached in *O'Brien*.

1. And since Bombardier's claims as Intervenor are asserted only against the MBTA, those claims would also be dismissed.

No matter how the Court resolves the sovereign immunity question, dismissal is appropriate under *O'Brien*. That is, even if the Court has jurisdiction to hear this case – which it does not – the Court should dismiss the Amended Complaints for failure to state cognizable claims.

Respectfully submitted,

CNR MA CORPORATION,

By their attorneys,

*/s/ Joel Lewin*
Joel Lewin, BBO, No. 298040
Rhian M.J. Cull, BBO No. 662035
Cori P. Palmer, BBO No. 681788
jlewin@hinckleyallen.com
rcull@hinckleyallen.com
cpalmer@hinckleyallen.com
HINCKLEY ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
(617) 345-9000

Dated: March 12, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 12, 2015.

*/s/ Joel Lewin*
Joel Lewin