```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    HYUNDAI ROTEM COMPANY,            )
                                        )
 4                     Plaintiff        )
                                        )
 5                                      )  No. 15-10132-FDS
      vs.                               )
 6                                      )
      MASSACHUSETTS BAY                 )
 7    TRANSPORTATION AUTHORITY, et      )
      al.,                              )
 8                     Defendant.

 9

10    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11

12                       MOTION HEARING

13

14

15        John Joseph Moakley United States Courthouse
                      Courtroom No. 2
16                    1 Courthouse Way
                      Boston, MA 02210
17

18                    March 17, 2015
                      2:30 p.m.
19

20

21

22

23           Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24     John Joseph Moakley United States Courthouse
               1 Courthouse Way, Room 3204
25                 Boston, MA 02210
               E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The Plaintiff:

3        Pierce Atwood LLP, by LARRY L. VARN, ESQ.,
     KATE R. ISLEY, ATTORNEY, 100 Summer Street, Suite 2250, Boston,
4    Massachusetts 02110;

5    For The Intervenor Plaintiff:

6        Wilser, Elser, Moskowitz, Edelman & Dicker, LLP, by
     THOMAS W. TOBIN, ESQ. and DANIEL M. BRAUDE, ESQ.,
7    1133 Westchester Avenue, White Plains, New York 10604;

8        Wilser, Elser, Moskowitz, Edelman & Dicker, LLP, GEORGE C.
     ROCKAS, ESQ., 260 Franklin Street, Boston, Massachusetts 02110;
9
     For the Defendant Massachusetts Bay Transportation Authority:
10
         MORGAN LEWIS, by JONATHAN M. ALBANO, ESQ., NEIL G.
11   McGARAGHAN, ESQ. and THANE D. SCOTT, ESQ., One Federal Street,
     Boston, Massachusetts 02110-1726;
12
         Attorney General's Office, by NICHOLAS A. OGDEN, ESQ., 1
13   Asburton Place, Boston, Massachusetts 02108;

14   For the Defendant CNR Massachusetts Corporation:

15       Hinckley, Allen and Snyder, LLP, by JOEL LEWIN, ESQ. and
     RHIAN M.J. CULL, ESQ., 28 State Street, Boston, Massachusetts
16   02109.

17

18

19

20

21

22

23

24

25                          I N D E X

3

1

2

3                              E X H I B I T S

4      No.        Description                      For I.D.

5      1          Governor's Budget FY 2011             27

6      2          MBTA Board Meeting Minutes of         28
                  December 2, 2009
7
       3          MBTA Board Meeting Minutes of         28
8                 June 2, 2010

9      4          Mass. DOT Board Meeting Minutes of    28
                  July 11, 2012
10
       5          Docket Number 10-cv-11567-RGS         32
11
       6          MBTA AUthority RFP No. CAP 27-10      42
12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                            PROCEEDINGS

2            THE CLERK:  All rise.  Thank you.  You may be seated.

3     Court is now in session in the matter of Hyundai Rotem Company

4     vs. Massachusetts Bay Transportation Authority, et al.,

5     Civil Action Number 15-10132.

6            Counsel, will you please identify yourselves for the

7     record.

8            MR. VARN:  Good afternoon, your Honor, Larry Varn and

9     Kate Isley from Pierce Atwood for Hyundai Rotem Company.

10           THE COURT:  Good afternoon.

11           MR. TOBIN:  Good afternoon, your Honor, Tom Tobin,

12    Dan Braude and George Rockas on behalf of the Bombardier

13    plaintiff.

14           THE COURT:  Good afternoon.

15           MR. ALBANO:  Good afternoon, your Honor, John Albano,

16    Neil McGaraghan and Thane Scott on behalf of the MBTA.

17           THE COURT:  Good afternoon.

18           MR. LEWIN:  Good afternoon, your Honor, Joel Lewin and

19    Rhian Cull on behalf of CNR Mass.

02:36PM 20           THE COURT:  Good afternoon, all.  This is a motion

21    hearing in this matter.  Mr. Albano, are you going to take the

22    lead here?

23           MR. ALBANO:  Yes, your Honor.

24           THE COURT:  All right.  I will hear from you first.

25           MR. ALBANO:  Your Honor, as you know, we have moved to

1    dismiss the case on three grounds:  Eleventh Amendment

2    immunity, lack of diversity and also abstention grounds.

3        What all three of those grounds share is that the

4    central premise of the plaintiff's case is an attempt to undo

5    two contracts that either were approved by or were actually

6    entered into by a state department, the Massachusetts

7    Department of Transportation, which I believe all parties agree

8    is itself immuned from jurisdiction in this court under the

9    Eleventh Amendment.

02:37PM 10        THE COURT:  That is the DOT?

11        MR. ALBANO:  Yes.  The first contract, the contract

12    awarded to CNR was approved by the board of the DOT.  That

13    approval was pursuant to a statutory requirement of

14    Chapter 161A.  Chapter 161A, Section 7 since 2012 has provided

15    that the MBTA Board is governed by and its corporate powers are

16    exercised by the DOT Board.

17        Those powers, those statutory powers of the MBTA

18    Board, pardon me, of the DOT Board acting in its role as

19    governing and exercising the corporate powers of the MBTA

02:38PM 20    include the power to enter into contracts of this very nature,

21    a procurement contract relating to new Orange and Red Line

22    cars.

23        THE COURT:  I'm sorry, there were two contracts, I

24    thought there was one awarded to CNR in October?

25        MR. ALBANO:  Well, the second contract it seems to me

1    is affected by the relief that the plaintiffs are seeking is

2    the inter-governmental services agreement that the DOT entered

3    into with the MBTA pursuant to which state funds are committed

4    to pay for this contract, and I believe it was in the plaintiff

5    Bombardier's papers that raised the prospect, and it's a very

6    sensible prediction of the outcome in this case were the relief

7    to be granted that the plaintiffs seek because it would not

8    just lock the performance of the CNR contract, it would, as an

9    ancillary matter, certainly undo that ISA agreement which,

02:39PM 10    again, was entered into by an immune state agency with the

11    MBTA.

12        So we have the first contract approved by an immuned

13    state agency, a related contract entered into by an immuned

14    state agency, all pursuant to amendments to the MBTA, MBTA that

15    have occurred over the years, most importantly from the 2009

16    act and then amendments to the 2009 act.

17        It has not been our position in this case, and it

18    isn't right now that the MBTA was born an arm-of-the-state.

19        Our position is that as a result of the numerous

02:40PM 20    statutory amendments, the changes that have been dictated by

21    the Massachusetts legislature that this entity, the MBTA at a

22    bare minimum, when it is exercising the functions at issue in

23    this case, i.e., performing a contract approved by an immuned

24    state agency, a contract that is 100 percent funded by

25    Commonwealth funds, that in that instance, yes, it is acting as

1    an arm-of-the-state.

2         And the plaintiffs say both of those contracts have to

3    be in effect blown up solely because of theories they advance

4    under state law, and those theories we say only underscore the

5    Eleventh Amendment problems that are presented in this case

6    because the guts of their theory is that the Governor and the

7    Secretary of State engaged in improper communications with

8    chinese joint venturers of CNR, so we have the Governor, which

9    would I think by all accounts, any Governor, would be sort of

02:41PM 10   the poster child for the Eleventh Amendment and the Secretary

11   Of Transportation, who I think we all agree is protected in

12   this capacity by the Eleventh Amendment.

13        The plaintiffs say our theory of state law is that

14   those two state actors engaged in improper communications that

15   tainted the integrity of the entire process, influenced the

16   MBTA to choose CNR over the plaintiffs, resulted in the MBTA

17   tamely acquiescing in the conducts of these two state actors,

18   and what the MBTA should have done is disqualify CNR as a

19   result of the improper contexts between these immuned state

02:42PM 20   actors and CNR.

21        Now, I know that after initially suing the Governor

22   and the Secretary of Transportation and all of the members of

23   the DOT Board that the plaintiffs later dropped them from the

24   case, but that cannot cure the Eleventh Amendment problems with

25   the theory that I've just articulated.  It would be like saying

1    after Banquo died, Banquo had nothing to do with the rest of

2    Macbeth.  Forever, in this case, forever, the factual issues

3    that a federal court is being asked to resolve are did the

4    Governor and the Secretary of Transportation engage in improper

5    communications that tainted the process under state law?  That

6    is always and forever going to part of the case that these

7    plaintiffs have articulated, and it raises unsolvable

8    Eleventh Amendment problems.

9         THE COURT:  Let me see if we agree on the framework

02:43PM 10    here.  My understanding is that you agree that the MBTA was not

11    an arm-of-the-state until at least 2009, in other words, the

12    case law was clear prior to the 2009 amendments that MBTA was

13    not an arm-of-the-state.

14         As I see it, the MBTA had at least not taken the

15    position between 2009 and 2012 that it was an arm-of-the-state.

16    There were cases, including one I had, in which they appeared

17    as a diverse defendant and did not claim sovereign immunity,

18    but the real change here is the 2012 amendments putting the

19    MBTA under the DOT Board.

02:44PM 20         That's what I think you say is the significant event

21    here, the world-changing event, so to speak, that makes it a

22    state agency for all purposes.

23         MR. ALBANO:  I think that's all fair.  I would clarify

24    it by saying I think it began in 2009 with the passage of the

25    Transportation Reform Act, and whatever was the status from

1    2009 to 2012, once that act was amended to provide that the

2    Department of Transportation Board governs and exercises the

3    powers of the MBTA, that puts the nail in the coffin, and

4    certainly when the MBTA is exercising powers, corporate powers,

5    that the statute says are governed by the DOT Board, and in a

6    situation where the contracts at issue are 100 percent funded

7    by the Commonwealth, that the combination of those two factors,

8    yes, whatever the case was before, I make no claim that back in

9    1983 the federal court sitting in the District of Idaho was

02:45PM 10    wrong when you line up the world in 1983 as it related to the

11    MBTA and the world as it related to the DOT and the MBTA after

12    2009 and particularly after 2012, the differences are stark and

13    require a different conclusion.

14        THE COURT:  All right.  But I think I also heard you

15    make a subargument that the MBTA could enjoy Eleventh Amendment

16    immunity for some purposes and not others, which strikes me as

17    a *Pennhurst*-type argument that when it's acting in a certain

18    role or a certain capacity or under certain circumstances, it

19    might enjoy immunity that it might not otherwise enjoy.  Is

02:46PM 20    that correct?  In other words, do I need to decide the broad

21    issue if I can decide the second issue?

22        MR. ALBANO:  I think one need not hold that the MBTA,

23    no matter what it is doing, no matter what the function is

24    always and forever an arm-of-the-state.  I know one Eleventh

25    Circuit case we cited said this more clearly than I'm sure I'm

1    about to, but that the analysis should turn on the particular

2    functions being exercised that are at issue in the case, and

3    that certainly is the argue that we're making here.

4            I am not attempting to say that every case filed

5    involving the MBTA must now always and forever, if it's filed

6    in federal court and based on state law must, no matter what,

7    be subject to the Eleventh Amendment.  There's always going to

8    be an issue, and there will be no inconsistency.

9            If I may just address the argument that the plaintiffs

02:47PM 10   have made, there will be no inconsistency if the MBTA is sued

11   next week in federal court, the case is assigned to your Honor

12   or to another Judge and the MBTA says I think we'll stay here.

13           THE COURT:  A slip and fall, somebody visiting from

14   Albany, New York slips on a banana peel at a subway station.

15   It's one of my concerns, obviously, I'm hesitant if I don't

16   need to to make a ruling that for all purposes and in all

17   situations the MBTA is immuned.

18           MR. ALBANO:  Let me go further.  I think one cannot

19   make that kind of a sweeping determination because of, A, the

02:48PM 20   fact based factors under *Fresenius*, for example, such a key

21   factor is are the funds of the Commonwealth at issue, and if

22   they are not, then the scales tip pretty drastically in the

23   other direction, so I don't think there's any circumstance that

24   this case could lead to the conclusion that no matter whose

25   money is being spent, the Eleventh Amendment must apply.

1          THE COURT:  All right.  Continue.

2          MR. ALBANO:  There is a related *Pennhurst* argument

3    because when going back and looking at *Pennhurst,* after you get

4    through the part of the decision that I think people are most

5    familiar with, the classic kind of Eleventh Amendment analysis

6    but before the end, the Court, the Supreme Court has to deal

7    with what do we do with these county officials who have been

8    sued who certainly are not state actors, and the facts of

9    *Pennhurst* were that the plaintiffs sue over the conditions at

02:49PM 10   state-run hospitals, sue state officials.

11          The holding of the case says Eleventh Amendment bars

12   one holding of the cases that the Eleventh Amendment bars

13   litigating those state claims against state officials in

14   federal court, but before the court draws its last breath, it

15   says we still have these county officials, what do we do with

16   them?

17          They said in this circumstance, since the relief that

18   the plaintiffs are looking for partially goes to these state

19   actors, who are now out of the case, much as in name only, the

02:50PM 20   state actors are out of the case now, the federal court can't

21   grant for relief with just these concededly nonstate actors.

22   That rationale, I think, would also apply in this case.

23          THE COURT:  I read that passage, and, in fact, focused

24   on it.  It wasn't clear to me what doctrinal peg the Court was

25   hanging that on, whether it was a Rule 19 type analysis, we

1   don't have all the parties in front of us, whether it was

2   Eleventh Amendment, whether it was abstention.  I mean, it all

3   kind of points in the same direction, but what is your view on

4   that?  What did they do with the county officials ultimately?

5   What is the doctrinal label you put on that?

6           MR. ALBANO:  I think there were two.  It did seem to

7   me that there was an Eleventh Amendment element to what the

8   *Pennhurst* Court was doing.  They said we have these state

9   actors out of the case.  The state actors, the release can't be

02:51PM 10   full unless we address the state actors.  We cannot address the

11   state actors, so the county officials are gone.

12           There was also a line about not ancillary jurisdiction

13   but --

14           THE COURT:  Pendent?

15           MR. ALBANO:  Yes, yes, pendent jurisdiction principles

16   applying as well.  That wouldn't apply here, but I think one

17   can't read that passage without saying, oh, there's an issue if

18   the state actors are gone but you just have local officials.

19   There still may be limits on a federal court's power to enter

02:51PM 20   relief.

21           It would at a bare minimum, I would suggest, your

22   Honor, be relevant to the alternative analysis of abstention

23   because if a federal court was weighing the considerations that

24   are relevant and whether Courts should abstain, then those

25   factors at the end of the *Pennhurst* decision would seem, you

1   know, well placed there as well.

2          The only other thing that I would say and before I sit

3   down is the nature of the state law claims here.  I do not

4   think an objective assessment of the state law claims here

5   yields a conclusion that there's nothing complex or difficult

6   that a federal court is being asked to do here, and I'll give

7   you one example why.

8          It seems to me that the plaintiffs do not agree on

9   what state law says in relation to this case because we know

02:53PM 10   that one plaintiff, HRC, says Chapter 60, 39M applies, I am the

11   true low bidder, and, therefore, the relief that the Court is

12   being asked to enter is make me the contract winner.

13          Now, on the defense side, we say 39M doesn't apply,

14   that only applies to contracts for buildings and building

15   materials.  There has been no response, it's been definitively,

16   the statute has been definitively construed that way, but

17   that's not just a difference between the plaintiff and that

18   particular defendant because Bombardier I think agrees with the

19   MBTA on this one because if they don't agree, then they weren't

02:53PM 20   the next lowest bidder, and if 39M applies -- and you don't see

21   any suggestion in Bombardier's papers that 39M applies -- if

22   39M applies, then Bombardier is entitled to nothing, HRC gets

23   the contract.

24          So that's just one example of a state law issue

25   presented where even the plaintiffs don't agree about what

1    state law says, and yet they are asking a federal court to

2    decide that issue.  The same is so with respect to the requests

3    for injunctive relief.  If there is no statutory bidding

4    provision that governed this procurement, as our papers have

5    said, we have not found a single appellate case in a state

6    court of Massachusetts that says that absent a statute you can

7    enjoin a contract when money damages are otherwise available.

8         I say no appellate case, not because I'm aware of

9    Superior Court cases holding otherwise, but I am aware of

02:55PM 10    Superior Court cases that said maybe it can, but here's why

11    we're not going to do it in this case.  That is, I'd suggest,

12    another important unresolved issue of state law that the

13    federal court is being asked to resolve in this case solely on

14    the basis of state law, so for those reasons, I think if I said

15    any more, I'd just be repeating what is in the briefs, so

16    unless there are questions, I think that fairly sums up our

17    position.

18         THE COURT:  Why don't I hear from the plaintiffs, and

19    we'll take it a step at a time.  Who's going to take the lead,

02:55PM 20    Mr. Varn?

21         MR. VARN:  Thank you.  With your Honor's kind

22    permission, I'd like to put up one document on the screen, and

23    just so we're all clear it is, it's cited I think in both

24    parties', all parties' briefing submissions, so it may take a

25    little bit to get it focused, but before I turn directly to

1   that, I'd like to respond initially before I make my pitch in

2   chief to a few things that my colleague, Mr. Albano, had to

3   say, the latter being I did not come here today with the

4   intention to argue whether or not Section 39M applies or

5   doesn't apply.

6         What Mr. Albano seems to be saying though is that in

7   essence the application of that I think fairly plain English

8   statute should not be entrusted to a federal court.  Here I

9   betray my age.  I think you and I and Mr. Albano are all about

02:57PM 10   contemporaries, but your Honor may recall many years ago

11   counsel for President Nixon argued to Judge Scirica that

12   Federal District Judges couldn't be trusted to deal with

13   certain matters involving the executive of the nation, and the

14   response from then Special Prosecutor Professor Cox was, "As

15   for me, I would trust those District Judges."

16         I don't believe there's any substantive issue in this

17   case that is in any sense beyond the kin, either intellectual

18   or jurisdictional, of the United States District Court.

19         Secondly, my Brother expressed concern about the

02:57PM 20   so-called ISA agreement between MassDOT and the MBTA.  Well,

21   initially there would be no need for a contract between the two

22   of them if they were one in the same entity.  That's like a

23   contract between your left hand and your right hand.  The fact

24   that that contract exists is simply evidence of the fact that

25   MassDOT and the T are two quite separate entities, although to

1    be sure muddled together in certain times for certain purposes.

2         Secondly, with respect to the issues involving then

3    Governor Patrick and Secretary Davey, the core claim here is

4    not that they acted improperly.  For all I'm concerned, we can

5    assume that he acted with the most altruistic of their motives

6    in their meetings with CNR, however, the core claim is that CNR

7    violated the rules, it cheated, and the consequence of that

8    should be the very consequence about which the MBTA warned all

9    the parties in the very get-go in the RFP, which is if you

02:58PM 10    cheat by doing an end-run around the communication provisions,

11    you get disqualified.

12         Lastly, the fact that those were once named parties of

13    this case did not go to the core claims involving the contract

14    between the MBTA and CNR, they went to the public records

15    request.  On a separate track, we have been working through

16    with the MBTA's counsel the public records request, and, you

17    know, although I say they've been trickling out about the speed

18    of the Red Line in a blizzard, we have been getting materials,

19    and they have been a very fruitful exercise.

02:59PM 20         Going to the core though, this motion should be

21    denied.  The MBTA is not now and never has been an

22    arm-of-the-state.  The 2009 Transportation Reform Act, and your

23    Honor may recall the history around that, did a number of

24    things.  The probably most important or significant thing that

25    it did was eliminate the former Massachusetts Turnpike

1    Authority and bring that fully into the orbit of the Department

2    of Transportation.  That made perfect sense on several levels,

3    not the least of which it was a solvent entity with solid,

4    stable recurring revenues.

5         For reasons that are not articulated, are not

6    published but what are clear is the MBTA, as well as other

7    authorities, such as Steamship Authorities, Massport, et cetera

8    were treated differently.

9         On the chart that is on the screen in front of you

03:00PM 10    which, by the way, I didn't draw, it was published actually by

11    the Commonwealth of Massachusetts, you will see that with

12    respect to the MBTA and Massport, the line is dotted.  It's not

13    solid, and, in particular, the Commonwealth, and this was part

14    I believe of one of the Governor's budget recommendations for a

15    particular year specifically highlighted in the box, "MBTA

16    remains independent."

17         And it is in fact independent on so, so many levels,

18    including perhaps the most important one to this case, which is

19    it's independent financially from the public treasury of the

03:00PM 20    Commonwealth.

21         One need only to look, for example, to Chapter 161A,

22    Section 2, which refers to the MBTA and makes clear that, "The

23    authority shall be liable for its debts and obligations."

24         One can look to Section 161, Section 8, I'm sorry,

25    Section 161A, Section 8, and that was a statute that provided

1    the diversion of certain sales tax receipts to help fund the

2    MBTA's chronic budget shortfall, and that statute specifically

3    says, "The receipts credited to such fund referred to as the

4    Massachusetts Bay Transportation Authority state and local

5    contribution fund, the receipts credited to such fund with a

6    couple of exceptions, referring to those receipts, "Meet the

7    full financial obligation of the Commonwealth to the

8    authority.""

9         You can also look at 161A, Section 8, which deals with

03:02PM 10    what happens when the T has a financial shortfall.  The T is,

11    therefore, under those circumstances is authorized to borrow,

12    not get a gift, borrow money from the Commonwealth provided

13    "the amount of any such support provided to the authority

14    pursuant to this section shall be in the form of a no interest

15    loan repayable within five years from the dedicated revenue

16    source and system revenues of the authority."

17         I highlight the -- and one can look at Section 161,

18    Section 13, which delineates in great detail the independent

19    authority of the MBTA to issue bonds, and in that section, it

03:02PM 20    also says that, and I quote, "Bonds and bond anticipation notes

21    may be issued under the provisions of this chapter without

22    obtaining the consent of any department, division, commission,

23    board, bureau or agency of the Commonwealth," and, further,

24    that MBTA bonds issued after July 1, 2000, "shall receive no

25    guarantee, pledge or support from the Commonwealth other than

1    the dedicated set aside monies that the legislature approved."

2          You may ask fairly why do I highlight the finances?

3    Apart from the usual rule that when you follow the money, the

4    truth usually stands you in the face, I refer your Honor to the

5    decision by your colleague, Judge Garcia-Gregory in Puerto Rico

6    in 2007 dealing with the bus authority for the City of

7    San Juan.

8          That is a post-*Fresenius* case.  It is a detailed

9    *Fresenius* analysis, and what is particularly noteworthy about

03:04PM 10   the case, and I'm looking at page 9, was that one of the most

11   important deciding factors in that case was the fact that that

12   particular authority, the San Juan Bus Authority's debts,

13   obligations, et cetera are not, were not, are not those of the

14   Commonwealth of Puerto Rico.

15          And further on the same page, that Judge listed seven

16   factors which I won't go into great detail, unless you ask me

17   to, that in that case collectively demonstrated that the Bus

18   Authority of San Juan was under considerably more influence and

19   control by the government of the Commonwealth of Puerto Rico

03:04PM 20   than is the case in the MBTA, and, nevertheless, he found

21   applying *Fresenius*, both tests, that it was not an arm of the

22   Commonwealth of Puerto Rico, and, therefore, did not have

23   Seventh Amendment -- excuse me, Eleventh Amendment immunity.

24          It seems to me that this is a case where, and I'm not

25   sure if it's the MBTA or the Commonwealth is trying to have its

1    cake and eat it, too, because on the one hand, it wants to say

2    it's for certain purposes, or at least for this one case, but

3    yet did not do the fundamental thing that it did do with the

4    former Turnpike Authority, which is also take responsibility

5    for its financial debts and obligations.

6         I can well understand, having lived here for a long

7    time, why that was a political choice, but it was the choice

8    that was made.  *Fresenius* also teaches us though in its first

9    prong of its inquiry, the question is has the Commonwealth

03:05PM 10    clearly structured the entity in question to share in

11    sovereignty?

12         The clear implication of that careful language by our

13    Court of Appeals for the First Circuit tells you two things, I

14    believe.  It tells you, 1, that the burden of proof of

15    establishing Eleventh Amendment immunity is on the entity that

16    seeks to do so, and, therefore, in the event of a tie, like any

17    burden of proof case, the movant loses.

18         Secondly, by use of the word "clearly," they didn't

19    say, you know, has it been established by a fair preponderance

03:06PM 20    of the credible evidence, which is the normal civil standard,

21    it said, "clearly."  Under these circumstances, as articulated

22    by the Commonwealth itself as set forth in the governing

23    statutes, that burden simply cannot be met here.

24         The Transportation Reform Act did a lot of things, but

25    it wasn't the C change that has been argued by the MBTA.

1    Formerly there was a board of the MBTA and the MassDOT, same

2    people, met on the same night in series to talk about the same

3    things, but at no time was that board ever fundamentally

4    controlled, you know, by the Commonwealth, per se.  It's a

5    board that true indeed is appointed by the Governor for

6    staggered terms from specific disciplines and for specific

7    reasons.

8         Even our Governor, our current Governor, was quoted as

9    saying, I don't control the T, I've only got one vote, and

03:07PM 10   that's an absolutely true statement.  The only direct appointee

11   by the Governor outside the staggered turn provisions is the

12   Secretary Of Transportation, and since we have a new Governor,

13   that's the only appointee he's made, so he himself has

14   distanced himself from Commonwealth control over the T.

15        If you look at General Laws, Chapter 6C, which is the

16   T Enabling Act as amended, as amended, as amended, authorities

17   like the T, unlike departments, more like Massport, Steamship

18   Authority and other authorities is still --

19        THE COURT:  Is the Steamship Authority treated like

03:08PM 20   Massport?  There's three of them, aren't they, basically --

21        MR. VARN:  I think there's three of them.  They're

22   treated like Massport and the T as authorities.  To be sure,

23   there is some intermingling.  You know, they are, after all,

24   creatures of the legislature ultimately, but they're treated

25   differently than departments because they retain autonomy and

1    particularly fiscal autonomy.

2         THE COURT:  But I thought even among that group that

3    some are treated differently than others.  The T, for example,

4    has the dotted line to the DOT Board, Massport has it to the

5    Secretary, I think you have Regional Transit Authorities in

6    Springfield and Worcester and maybe elsewhere.  I wondered if

7    there was any significance in any of that?

8         MR. VARN:  Not that I have been able to ascertain from

9    any of the legislation, and as your Honor is well aware,

03:09PM 10   there's generally a pausity of legislative history surrounding

11   state legislation, but there is the statute, there is

12   Chapter 6C, which:  1, continue to this day to include the MBTA

13   in the definition of "independent agency."

14        2, specifically excludes the MBTA from being

15   considered.  Unlike Mass. DOT, specifically excludes the MBTA

16   from being considered as an agency of the Commonwealth.

17        3, even with all these amendments, did not change in

18   any way the definition of the MBTA's status as a "person under

19   the law," even though Mass. DOT was specifically excluded as a

03:09PM 20   "person under the statute."

21        And, last, did not include the MBTA as one who is

22   represented in litigation by the Attorney General's office.

23        Your Honor I know, I believe, is well familiar and

24   certainly from our briefs with the *Suprenant* case, so I won't

25   go into that at great length, but that, too, underscored and

1    out of the very voice of none other than the Attorney General

2    of the Commonwealth the distinctions and differences between

3    the T and certain other authorities on the one hand and true

4    governmental authorities where the legislature "clearly,"

5    that's the word, "clearly," from *Fresenius* intended to extend

6    arm-of-the-state status.

7        As has always been the case from its original enabling

8    act, even to this day, the MBTA has the power to hold property

9    in its own name, to sue and be sued, to be liable for its own

03:10PM 10  debts, to be liable for judgments against it and to enter into

11   contracts or agreements in its own name and with others.

12       Your Honor I know is familiar with the *CSX* case, so I

13   won't bring coals to Newcastle on that one.  Now, like my

14   Brother, if I say much more, I'm just going to either repeat

15   myself or be redundant, and so unless your Honor has questions,

16   I'll be happy to sit down.

17       THE COURT:  All right.  Mr. Tobin, do you want to

18   weigh in here?

19       MR. TOBIN:  Thank you, your Honor.  Dealing with the

03:11PM 20  MBTA's presentation first, there are a couple of false issues

21   that I recognized in listening.  The first is we agree with

22   your Honor, there is only one contract, and that's the contract

23   between the MBTA and CNR.  That's the contract that we're here

24   protesting about.  We are not interested in the I guess it's

25   the internal service agreement between the MBTA and Mass. DOT,

1    and I would actually join Mr. Varn that the mere fact that that

2    contract exists suggests that the two entities are separate and

3    both of them are not arms-of-the-state.

4         The second is with regard to the actions that will be

5    involved in the underlying litigation.  We are not here to ask

6    this Court to pass judgment on the conduct of the Governor or

7    the Secretary Of Transportation.  We are here to ask the Court

8    eventually to consider the conduct of the MBTA.  Did they abuse

9    their discretion with regard to their investigation of

03:12PM 10    the conversations that took place or not?

11         THE COURT:  That's part of the case, isn't it?  I

12    mean, wouldn't I necessarily, if I were the fact-finder, have

13    to find that there was some kind of conduct by the Governor or

14    the Secretary that tainted the bidding process such that CNR

15    should have been disqualified?  Isn't that a central allegation

16    in the case?

17         MR. TOBIN:  Your Honor, I don't think so.  This is an

18    RFP like any other for procurement in the transportation

19    industry, and it says on those who are bidding may only

03:13PM 20    communicate with one person, and that was here in this RFP as

21    well.  If they had been discussing it with someone on the

22    selection committee or an engineer or anybody else who was part

23    of the process, we would also be here today.

24         The mere fact that they happened to be discussing it

25    with Secretary Davey and the Governor, that's in some ways

1    neither here nor there, it's the impermissible conduct, what

2    was discussed, did it taint the process?  The fact that it

3    happened to be senior level officials, you know, possibly makes

4    it more interesting, but we're not interested, we're not asking

5    for any adjudication on whether they were wrong.

6         The person with the implied contract, the entity, was

7    CNR and the MBTA.  There was an agreement and also our client,

8    Bombardier, that there would be no outside contact upon the

9    threat of disqualification, that's the focus.  It's not the

03:13PM 10    focus of the government actors who happen to be high level

11    officials, it's the focus on the MBTA:  What did they do?  Did

12    they abuse their discretion?

13         THE COURT:  All right.

14         MR. TOBIN:  So moving more to the core of things,

15    there was a lot of discussion in the motion itself with regard

16    to the 2009 amendment, and that was addressed in our

17    opposition.  In the reply that came back, there was almost no

18    mention of the 2009 amendment at all.  It was all about the

19    2012 amendment to the reform act, and so we, of course, took a

03:14PM 20    look at that and said what happened between 2009 and 2012, and

21    the MBTA submits that the I guess as of this afternoon things

22    evolved to where in 2009 the Massachusetts Department of

23    Transportation was created, and there was some oversight

24    responsibility given, but it really wasn't until August of 2012

25    that the Mass. DOT Board took over control over the MBTA, and

1    when you look at that, it becomes quite interesting.

2        We have brought with us a copy of the Governor's

3    budget overview from 2011 that was promulgated in early 2010,

4    and with your permission, I'd like to hand it up to the Court

5    and to our adversaries.

6        THE COURT:   All right.

7        MR. TOBIN:   What's important there, your Honor, are

8    some of the sections that we've highlighted.   The first is this

9    is a document that discusses for fiscal year 2011.   On the very

03:15PM 10  last page, there's reference to "will occur February 1, 2010,"

11   which strongly suggests this predates February 1, 2010, and the

12   discussion that's of interest is a very clear statement that

13   the MassDOT Board of Directors serves as the governing body of

14   the MBTA, which itself remains a separate organization within

15   Mass. DOT.

16        So, here's the Governor in early 2010 announcing that

17   the MassDOT Board of Directors is in control, but even more to

18   the point, when you go on to page 3, there's a discussion of

19   what the MassDOT, what control do they have, and the Governor

03:16PM 20  says under the act, the MBTA remains a separate legal entity,

21   but it's subject to greater levels of oversight and

22   coordination with MassDOT.

23        The MassDOT and MBTA Board of Directors have the same

24   five members allowing for improved communication, coordination

25   and planning, and then it goes on to talk about the funding,

1   which has already been discussed, but when you look at this,

2   the next logical thing it drove us to do, your Honor, was to

3   take a look at the board meetings between 2009 and 2012 to see

4   if in fact MassDOT did exercise control over the MBTA, and it

5   turns out that they did.

6          And we would like to pass up to you, if we could, the

7   MBTA Board meeting minutes from December 2 of '09, June 2 of

8   2010 and then the MassDOT meeting minutes from July 11 of 2012,

9   each of which deal with control over the MBTA well before the

03:17PM 10   August of 2012 date of the amendment, and the reason this is

11   important, your Honor, is --

12          THE COURT:  Before we get into that, I'll have the

13   document that indicates Governor's Budget FY 2011 marked as

14   Exhibit 1.

15          (Governor's Budget FY 2011 was marked Exhibit No. 1

16   for identification.)

17          THE COURT:  This is a motion to dismiss.  Mr. Albano,

18   is there any objection to me considering this information?  It

19   appears to be public records that I could take judicial notice

03:18PM 20   of.

21          MR. ALBANO:  No, I'd just like to get copies.

22          THE COURT:  Yes.  All right.  We'll mark the second

23   item as Exhibit 2.

24          THE COURT:  The board meeting minutes will be

25   Exhibit 2 of December 2nd of 2009, that is, and the June 2nd,

1    2010 shall be Exhibit 3, and July 11th, 2012 shall be

2    Exhibit 4.

3            (MBTA Board Meeting Minutes of December 2, 2009 was

4    marked Exhibit No. 2 for identification.)

5            (MBTA Board Meeting Minutes of June 2, 2010 was marked

6    Exhibit No. 3 for identification.)

7            (Mass. DOT Board Meeting Minutes of July 11, 2012 was

8    marked Exhibit No. 4 for identification.)

9            MR. TOBIN:  Just to put things in perspective before

03:18PM 10   we go into the actual minutes, the MBTA has argued that the

11   *Suprenant* brief in which the Attorney General asserts that the

12   MBTA is an independent organization, and they contrast them

13   with MassDOT ought not be really examined for what it is

14   because the control didn't shift until August of 2012, and this

15   brief was before that, and we think that the combination of the

16   Governor's comments about the control as well as these board

17   meetings sheds some light for the Court as to what level of

18   control took place when the Attorney General made those

19   statements, so the December 2, 2009 board meeting minutes has a

03:19PM 20   yellow tab, and I guess the pages are not numbered, but

21   highlighted there there is a vote of the MBTA Board that says

22   the acting general manager be and hereby is authorized to

23   execute in the name of and behalf of the authority, the MBTA,

24   subject to the approval of the Department of Transportation,

25   MassDOT and in a form approved by the general counsel, so here

1    is the MBTA acting subject to the approval of MassDOT in

2    December of '09.  So they know who's controlling them, they

3    know what they have to do in the board meetings would be our

4    submission.

5           A similar entry is from the June 2, 2010 board

6    meetings where on page 10629 also with a red tab, there's

7    another vote that the general manager be and hereby is

8    authorized to execute in the name of and on behalf of the

9    authority subject to the approval of the MassDOT, Massachusetts

03:20PM 10   Department of Transportation in a form approved by the general

11   counsel another contract for $6 million, and so, once again,

12   they are moving forward subject to the approval of MassDOT.

13          And then the final one that we've brought, your Honor,

14   is July 11, 2002, also before the amendment -- I'm sorry,

15   July 11, 2012, prior to the August, 2012 amendment where

16   MassDOT authorizes the secretary and CEO and the acting MBTA

17   general manager to negotiate a contract for $17 million, and so

18   here's the MassDOT Board authorizing MBTA to do something, a

19   $17 million contract prior to the amendment.

03:21PM 20          And so we submit to you, your Honor, that the

21   August amendment was nothing more than cleaning up the control

22   of the MBTA where they had the identical people on two boards.

23   They knew who was responsible for the actions taken by the

24   MBTA, and after that they merged the two boards, which wasn't

25   much of a merger at all because it was the same people, four of

1    the five anyway, and so the C change that was represented to

2    have taken place with the amendment we don't believe was a C

3    change at all, we think it was a statute that cleaned up the

4    manner in which the boards were acting already.

5         This is not an exhaustive look at the board minutes.

6    These are some board minutes that we glanced at and found to be

7    relevant.  In going on from there, there was also a change made

8    in the enabling legislation, the 2012 amendment to the

9    legislation that changed the authority of the MBTA's ability to

03:22PM 10   enter into contracts, that after August of 2012, according to

11   Chapter 6C, Section 2, the authority's ability to enter

12   contracts was increased to $15 million from two and a half

13   million dollars, that the autonomy was increased, not decreased

14   as a result of that change.

15        The public fisc argument was discussed briefly.  We

16   are not asking for money damages here, your Honor, Bombardier

17   is asking for an injunction that the bid be rebid, that the

18   clock be turned back and that the procurement start anew,

19   either from the beginning or some logical point after that.

03:23PM 20        In situations like that, there is no issue with regard

21   to whether an entity is going to be responsible for debt, and

22   at the same time, even if there were, as Mr. Varn pointed out,

23   the MBTA is not in a position where the Commonwealth must pay a

24   debt.

25        There are voluntarily contributions that have been

1    made, and under the *Cooper vs. SEPTA* case that we cited,

2    voluntarily contributions don't rise to the level under the

3    *Fresenius* case to -- it doesn't solve the second prong there

4    that it has to be a mandated situation where the Commonwealth

5    is mandated to pay the debt or it's constructive with regard to

6    paying the debt, and that's simply not what's happened here.

7          There has been discussion of the possibility that the

8    Commonwealth may end up paying more for their rail cars, and at

9    the same time, we would like to also make mention that the

03:24PM 10    independent cost estimate that is part of the record that the

11    MBTA commissioned comes up with some numbers, and the bid

12    that's going to be at issue in the underlying litigation is

13    below the lowest part of the independent cost estimate, and so

14    it's our position that the Commonwealth is at risk now

15    financially, and if it's rebid and there's a bid that may be

16    somewhat higher than that, it's quite likely it's going to be

17    within the realm of this same kind of risk.  We don't think

18    that the Court needs to get there, but the independent cost

19    estimate we think should play some role in the Court's analysis

03:25PM 20    as to the risk if you do get that far.

21          Oh, the very last thing.  There was a case that we did

22    cite, your Honor, in which the MBTA asked for Eleventh

23    Amendment immunity, and Judge Richard Stearns here in the

24    District Court denied that immunity.  There was some

25    suggestion, maybe some confusion as to whether or not the Court

1    actually considered the 2009 amendment in the decision in that

2    case, and when you look at the docket entry, which we would

3    like to submit to the Court, it's very clear that the Court

4    considered the 2009 amendment, so we'd like to also pass that

5    up to the Court and to the other parties.

6         THE COURT:  All right.  I'll make that Exhibit 5.

7         (Docket Number 10-cv-11567-RGS was marked Exhibit

8    No. 5 for identification.)

9         MR. ALBANO:  Just for the Court's convenience, that's

03:26PM 10   already attached to our reply memorandum so I have that.

11        MR. TOBIN:  The docket itself?

12        MR. ALBANO:  The docket entry, the motion.

13        MR. TOBIN:  That's the only point we wanted to make

14   there, your Honor, is that from the docket entry, it's very

15   clear that the Court did consider the 2009 amendment, and so

16   unless you do have questions about that or the other points, I

17   would be happy to sit down.

18        THE COURT:  That's fine.  Mr. Albano, I'll give you a

19   chance to -- I'm sorry.

03:27PM 20        MR. LEWIN:  Your Honor, I would like to briefly

21   address the abstention issue, with your permission.

22        THE COURT:  Yes, Mr. Lewin.

23        MR. LEWIN:  In the *O'Brien vs. MBTA* case, the

24   First Circuit case, on the issue of abstention, the Court made

25   it clear that it was not proper for a federal court to

1    supervise state officials' compliance with state law.  The

2    state officials that we are talking about in the last 10 or 15

3    minutes is the MassDOT Board of Directors, the MassDOT Board,

4    which governs and controls the MBTA according to counsel for

5    the protesters.

6         Now consider what the protesters are asking you to do

7    with regard to these state officials.  They are asking the

8    federal court to order the award of the contract that was

9    awarded by the MassDOT Board to be revoked, and in the case of

03:28PM 10    HRC, they want that award to go to HRC, an award that was to be

11    made decided by the MassDOT Board, or they want it rebid again,

12    a decision that's to be made by the MassDOT Board.

13         They want, the protesters want, based upon misconduct

14    by CNR Mass., they want CNR Mass. disqualified from any rebid.

15    That, again, is a decision that we say can only be made by the

16    MassDOT Board at the board meeting when the issue of who gets

17    the award is to be decided.

18         They finally want the federal court to decide, which I

19    believe is again a matter of state law, that the risk to the

03:28PM 20    MBTA and the risk to the public interest by restarting or

21    reprocuring this contract and delaying it is outweighed by the

22    harm to the protesters.  These are all issues of state law

23    requiring the Court to govern the conduct of state officials,

24    the Mass. Department of Transportation Board of Directors.

25    Thank you.

1          THE COURT:  Mr. Albano.

2          MR. ALBANO:  Very briefly, your Honor.  Two quick

3     quotes from the plaintiff's complaints:  "CNR also sweetened

4     the deal by dangling before the then Governor MassDOT and the

5     MBTA a promise to establish its North American headquarters in

6     Massachusetts."  That's paragraph 84 of Hyundai's complaint,

7     and it's incorporated in paragraph 45 of Bombardier's.  They

8     continue:  "Unfortunately, our former Governor, his Secretary

9     Of Transportation, MassDOT and the MBTA took the political

03:30PM 10     bait," paragraphs 85 and 45.  I don't read those, nor do I

11     think they can be read as addressing any public records issue,

12     which, by the way, the Governor is not subject to.

13          Secondly, on the exhibits that have been offered

14     today, I kind of wish I had found them myself.  Exhibit 1

15     speaks to the "radical change" affected by the Transportation

16     Reform Act.  The other exhibits confirm MassDOT Board's

17     continued -- that the MBTA is, in fact, subject to the control

18     of the MassDOT Board.  Our position is not that they are one in

19     the same, that they have been merged.

03:31PM 20          Our position is that the MBTA is sufficiently governed

21     and its corporate powers exercised by the MassDOT Board with

22     respect to this procurement that the Eleventh Amendment

23     applies.

24          I don't think the significance of the MassDOT Board

25     can be doubted here because, although I wasn't there,

1    representatives of the plaintiffs, when they wanted to get a

2    postponement of this award, showed up and signed in at a

3    meeting of the MassDOT Board of Directors.  That's that

4    Exhibit B to our reply brief.  They didn't show up there by

5    accident.  The place to go when you wanted to get a

6    postponement of the award of this contract was to a sovereign

7    entity, the Board of Directors of MassDOT.

8              Finally, the Commonwealth's funds are undeniably at

9    issue in this case.  Can the MBTA raise funds?  Yes, it can.

10   Did it raise, is it their funds that are funding this contract?

11   Everybody's in agreement, no, it is not, it is the

12   Commonwealth's funds that were committed, and even if what is

13   being suggested here today is that we'll just put those --

14   we'll give the funds, the $2 billion back to the Commonwealth,

15   and we'll let the MBTA try and figure out this chronically

16   underfunded, we've heard, MBTA figure out how it's going to

17   come up with another billion or so to get some new Orange and

18   Red Line cars after the winter we've had, to suggest that the

19   relief in this case is not affecting the funds of the

20   Commonwealth, I would suggest can't carry the day.

21             What the *Fresenius* case said was that the test of

22   whether public funds, Commonwealth funds are at issue is

23   whether the state has legally or practically obligated itself

24   to pay the entity's indebtedness, that's the indebtedness under

25   the contracts being challenged.  What *Pennhurst* said is the

1    general rule is that a suit is against the sovereign if the

2    effect of the judgment would be to restrain the government from

3    acting or to compel it to act.

4        There is hundreds of million dollars of the

5    Commonwealth's funds that is at issue in this case that this

6    complaint is directed at, and for that reason, it's an action

7    against the arm-of-the-state under these circumstances.

8    Thank you.

9        MR. VARN:  Your Honor, may I respond to some of the

03:33PM 10    new materials that came up in the replies?

11        THE COURT:  Yes, Mr. Varn.

12        MR. VARN:  First of all, on the issue of the

13    Commonwealth's fund, I was at the MassDOT Board meeting, and I

14    think the minutes clearly reflect that this funding was to come

15    through the issuance of bonds under the MBTA's independent bond

16    issuance authority.  This was not intended I don't believe to

17    be a general appropriation.

18        Secondly, with respect to the *O'Brien* case mentioned

19    by my colleague, Mr. Lewin, I have been puzzled from the get-go

03:34PM 20    as to why the moving parties rely on O'Brien.  First of all, it

21    was not an Eleventh Amendment case, it was a federal preemption

22    case involving the MBTA's -- involving the strings which the

23    federal government attached.

24        THE COURT:  Well, that was the first part of the case.

25    The second part, I think, addresses these issues.

1          MR. VARN:  The first part was a preemption case,

2    Number 1.  Number 2, ironically, the only reason that case

3    ended up in federal court is because the MBTA removed it from

4    state court to federal court.  And, third, this is not a case

5    where the plaintiffs are seeking a federal supervision.  That's

6    the term from that case in which it derives from *Pennhurst*,

7    it's simply seeking a straightforward application, you know, of

8    what we regard as pretty plain English black letter law, and

9    that's all I have.

03:35PM 10          MR. TOBIN:  We have nothing further, your Honor.

11          THE COURT:  All right.  I think the money quote from

12    *O'Brien* is as follows:  This is *O'Brien v. MBTA,* 162 F.3d 40,

13    First Circuit 1998.  Instead of arguing simply that federal law

14    lacks pre-emptive effect and that the MDR forbids the MBTA from

15    conducting random tests, MDR being the Massachusetts

16    Declaration of Rights, the plaintiffs assert that the MBTA

17    should be precluded from applying for federal funds in the

18    first place because accepting such funds will create an

19    inevitable conflict of state law.

03:35PM 20          The paramount problem with this argument, there are

21    others which we need not discuss, is that it invites a federal

22    court to enjoin state officials, those who manage the MBTA,

23    from acting in a manner that allegedly contravenes state law.

24    They go on, and they cite a number of cases and quote

25    Justice Powell from *Pennhurst*.  Now certainly it's not clear to

1    me whether that's an abstention case, whether that's a

2    *Pennhurst* case, although *Pennhurst* is cited, or whether it's

3    something else, but the underlying concept it seems to me is

4    the same regardless.

5         Let me shift gears.  I have a question that may or may

6    not be important, but I don't understand it so I'm going to ask

7    it.  Mr. Albano, I guess I'll give it to you first.  What is

8    the procedure internally within the Commonwealth or DOT or

9    whoever it is to appeal an award that you think is unlawful, an

03:36PM 10   award of a contract?  I mean, there's a process underway.  Who

11   is the appeal to?  What are the standards?  Is it reviewable in

12   the superior court?  How does this work?

13        MR. ALBANO:  So there is an appeal first to a chief

14   procurement officer, which has been decided.  You then may

15   appeal --

16        THE COURT:  Procurement officer of the T?

17        MR. ALBANO:  Of the T.  This is not pursuant to any

18   statute, this is pursuant to the RFP and related documents.

19   You appeal first to that chief procurement officer.  If that's

03:37PM 20   not to your liking, you appeal to the general counsel of the

21   MBTA.

22        From there, things are less clear.  One could argue

23   that if you are unhappy with the general counsel's

24   determination, you have an action for certiorari in the

25   Superior Court or the SJC.

1              The alternative argument would be that the RFP

2       constitutes some type of implied contract, so you may bring

3       suit we say in the Superior Court, and then that Superior Court

4       Judge would have to decide is this a claim in which injunctive

5       relief is proper or is this a money damages claim?

6              THE COURT:  But there's no statutory or regulatory

7       right to protest contract awards in Massachusetts as far as

8       you're aware?

9              MR. ALBANO:  There are, just not that governs the

03:38PM 10      MBTA's procurement.  There certainly are, there's a whole

11      agency in other cases, it's 39M, and I forget the number of the

12      other statute, but there are other bidding statutes that have

13      very precise requirements, and they usually require low bidder

14      wins, and those statutes do have administrative appeals that

15      are I would think it's fair to say meatier than going

16      internally to the awarding authority.  Those statutes just

17      don't apply to the MBTA, that's why they haven't been followed

18      by any party in this case.

19             THE COURT:  All right.  Is the MBTA subject to the

03:39PM 20      whole panoply of things that at least from my lay perspective

21      tend to complicate and drive up the costs of state contracts,

22      prevailing wage and minority subcontracting?  You know, there's

23      dozens of these kinds of requirements.  Are they required by

24      statute or regulation to conform with all that or is it just

25      part of the RFP or does it not exist?

1          MR. ALBANO:  Well, I want to make sure I don't sound

2    like I know more than I actually do, but I have been through

3    this at least once before, and the 161A is really the -- so my

4    answer is essentially it's in the RFP.

5          THE COURT:  All right.

6          MR. ALBANO:  There may be.  I'm sure there's other

7    laws of general application that apply to the MBTA, but in this

8    case, as in the prior experience I'm talking about is the

9    computer rail procurement, which was a case heard in superior

03:40PM 10    court in front of Judge Kaplan, and so these issues were kind

11    of rehearsed there, and that's the basis for the answers I've

12    just given your Honor.

13          THE COURT:  Mr. Varn or Mr. Tobin, do you want to

14    weigh in either in response to that or any other issue?

15          MR. VARN:  No, I think we're in agreement.  The

16    administrative process is something that is completely

17    fashioned by the T without, so far as we can tell, any

18    statutory underpinning, and it has been exhausted.  If that was

19    the intent of your question, whether there was some

03:40PM 20    administrative process that hadn't run its course, it has run.

21          THE COURT:  It's key to some of these issues.

22    Certainly, for example, abstention, is there a state process

23    that needs to run its course?  And it sounds to me, either, A,

24    there is no such process, or, B, to the extent it exists, it's

25    contractual or quasi-contractual and it's run its course?

1          MR. VARN:  I think that's right.  I think that's

2     right.

3          THE COURT:  Mr. Lewin.

4          MR. LEWIN:  Just to clear up, the Massachusetts

5     statutes that deal with public procurement, there's one that

6     deals with public works, which is Chapter 30, Section 39M.  It

7     does contain a protest procedure, it only contains a standard

8     for selecting a successful bidder, which is the lowest bid.

9          THE COURT:  Usually lowest qualified bid.

03:41PM 10          MR. LEWIN:  Lowest responsible and eligible bidder is

11     the exact language, then there's a public building statute,

12     Chapter 149, and, again, that does not contain a protest

13     procedure, it just creates detailed standards for selecting the

14     lowest bidder, so there is no statutory protest procedure for

15     public construction, buildings or public works.

16          As far as prevailing wage and the E requirements, et

17     cetera, there's an overall prevailing wage statute which

18     governs all public construction contracts, it doesn't govern

19     this subway contract, but within the RFP, there are various

03:42PM 20     requirements for MBE, WB compliance and other such things.

21          THE COURT:  Okay.  Thank you.

22          MR. ALBANO:  Your Honor, I should have said I have the

23     world's expert sitting behind me.

24          MR. TOBIN:  Your Honor, if I might?

25          THE COURT:  Yes.

1          MR. TOBIN:  We happen to have with us copies of the

2     November 10 letter from the MBTA general counsel to all parties

3     that bid that provides the procedure for the protest and the

4     appeal.

5          THE COURT:  Why don't we take a look at that.  We'll

6     mark this as Exhibit 6.

7          (MBTA Authority RFP No. CAP 27-10 was marked Exhibit

8     No. 6 for identification.)

9          MR. TOBIN:  Although that's written to Bombardier, I

03:43PM 10     believe the same document was provided to HRC.

11          THE COURT:  All right.  This is a November 10, 2014

12     letter to Wilson Elser from MassDOT.

13          MR. TOBIN:  It's MBTA general counsel, your Honor,

14     Paige Scott Reed, I believe.

15          THE COURT:  Yes, okay.  All right.  That indicates

16     that any protest or appeal goes to the chief procurement

17     officer, then to the general counsel, and that review is final.

18     All right.  Just give me a moment.

19          All right.  I'm going to issue a ruling from the

03:44PM 20     bench.  I'm doing so despite the relative complexity of this

21     matter because my perspective is that time is at least an

22     important factor in all of this, and I don't want there to be

23     undue delays.  There's always some risk when I do this that I

24     don't quite state things properly or that I misspeak, and we'll

25     just have to live with that possibility here.

1        As I see it, there are at least three central threads

2   or legal arguments here that potentially might preclude me from

3   resolving this issue.  The first is Eleventh Amendment immunity

4   or sovereign immunity, the argument that the MBTA is an

5   arm-of-the-state for all purposes.  The second is some

6   variation of *Pennhurst* and *O'Brien*.  It's a bit of an amalgam,

7   as I see it, of sovereign immunity, Rule 19 and abstention

8   doctrine, and the third thread is abstention itself.

9        What I'm going to do is grant the motion to dismiss,

03:45PM 10  and I'm going to do it on the second and third grounds.  I'm

11  going to discuss the first ground, that is, whether the MBTA is

12  an arm-of-the-state, but I'm not going to rely on that issue.

13  I suspect, as I will indicate, that the MBTA is not an

14  arm-of-the-state, but it's a close call, and I don't think I

15  need to reach that issue.

16        I'm going to start by talking about some broader

17  points and principles and work back into the details to try to

18  explain as best I can this decision, and I'm doing it against a

19  backdrop of both state and federal law that to some extent is

03:46PM 20  maddingly unclear.

21        The central allegation of the complaint, as I see it,

22  is that state officials have violated state law in the awarding

23  of a contract.  There's no federal constitutional claim here.

24  Indeed, there's no federal claim of any kind.  There's no

25  federal interest of any kind at stake as near as I can make

1    out.  The only basis of jurisdiction is diversity.  Federal

2    courts have an unflagging obligation to exercise jurisdiction

3    when they have it, but that is only the starting point for the

4    analysis here, and to quote Justice Powell in *Pennhurst*, "It is

5    difficult to think of a greater intrusion on state sovereignty

6    than when a federal court instructs state officials on how to

7    conform their conduct to state law."

8         The state law claims here it seems to me are

9    peculiarly within the expertise of the state courts.  These are

03:47PM 10   not garden variety common law torts.  It involves a variation

11   of the state bidding and procurement laws.  It possibly

12   involves state ethics laws, state public record laws,

13   Chapter 93A.

14        There are, I think, a multitude of unsettled issues of

15   state law.  That's not a reason standing alone to shy away, but

16   clearly when there is a state scheme of any complexity, it's a

17   reason for a federal court to give pause before wading into the

18   thicket.

19        Plaintiffs here seek what is essentially equitable

03:48PM 20   relief.  They seek declaratory and injunctive relief, in

21   substance seek to have this Court overturn the awarding of a

22   contract, really a huge contract, to declare in the case of

23   Hyundai that their bid was the lowest, and in the case of

24   Bombardier, to reopen bidding.

25        In substance, the plaintiffs seek to have this federal

1    court order the MBTA to either award the contract to someone

2    else or to set in motion a process so the contract can be

3    awarded to someone else.  The amounts in question, as I

4    indicated, are huge.  The contract is more than $500 million as

5    awarded.  Hyundai's bid, I believe, was in excess of $700

6    million, and one of the central allegations of the complaint is

7    that is a predatory and unfairly low bid by a chinese company

8    made under questionable circumstances.

9         If either plaintiff were to prevail, there is

03:49PM 10    obviously a strong likelihood, if not certainty, that the MBTA

11    will need to spend another $160 million in funds from some

12    source, whether the T's own funds from fares and bond proceeds

13    and so forth, or state money.  Effectively I am being asked to

14    order the expenditure of those funds, or at the very least,

15    expose the Commonwealth and/or the MBTA to those expenditures.

16         If there were a claimed federal constitutional

17    violation, that might be the way the chips fall, but, again,

18    this is a claimed state law violation, and to be frank about

19    it, I think there's a substantial likelihood that there may be

03:50PM 20    cost overruns no matter who is awarded the contract.  Hyundai

21    and Bombardier say that it's inherent in the bid, that the bid

22    is unfairly low, but it would be a rare state project of any

23    complexity that came in on time and within budget.

24         This is a matter of considerable public importance and

25    interest.  This is not a slip and fall at the Park Street

1    Station.   The public transit system in Boston and surrounding

2    communities effectively collapsed this winter.  It still has

3    not recovered.  Service is still not back in its entirety.

4    Certainly the Red Line was one of the hardest hit of the lines.

5         If press accounts are to be credited, there, I think,

6    is lots of blame to go around, including labor and management,

7    but certainly there were reports that outmoded or broken down

8    equipment was at least partly to blame, and this contract,

9    again, is a matter of considerable public interest in light of

03:51PM 10    recent events, but, again, regardless, it's not a

11    garden-variety dispute but a matter of considerable

12    significance to the Commonwealth and the public, both because

13    of the amounts expended and the importance of public transit to

14    the Boston metropolitan area.

15         The funds of the Commonwealth are either at issue or

16    are effectively at issue.  The funding was supplied by the

17    state, the contract was approved by DOT, and it is I think not

18    entirely accurate to indicate that public funds are not in some

19    way implicated or at risk, and there is a central allegation

03:52PM 20    that the Governor and the Secretary of the State engaged in

21    unlawful contact of some kind with the bidders' representatives

22    or that the bidder allegedly illegally offered to establish a

23    factory, which was a illegal or improper inducement to enter

24    into the contract.  Whether it just happens that those contacts

25    were made by the Governor, defendant says it doesn't matter,

but I don't think that's quite correct.  Again, it underscores the uniquely state-focused nature of this dispute.

So under any circumstances, I think a federal court ought to be hesitant in the extreme to address an issue of this nature, given our federal system, given sovereign immunity, the Eleventh Amendment and the various abstention doctrines and related abstention doctrines that govern these sorts of matters.

Again, the case is here on diversity jurisdiction only.  Hyundai is a Korean corporation.  Bombardier is a Delaware Corporation from Pennsylvania.  The MBTA obviously is -- well, by statute, by Chapter 161A, it's a body political and corporate and a political subdivision of the Commonwealth.  CNR is a Massachusetts corporation, but, as I understand it, is a subsidiary or a joint venture that involves the chinese government.

The basic facts I'll just touch on.  I don't think they're controverted.  There was a request for proposals in 2013 for the manufacture and delivery of up to 284 new Orange and Red Line vehicles.  Bids were submitted in May of 2014 by CNR, Hyundai, Bombardier and other companies.

In October, 2014, the contract was awarded to CNR, and in November, the MBTA entered into a contract with CNR.  There was an administrative protest of some kind, as indicated in the record thus far, which has not been successful.  In January,

1    the MBTA indicated that it had informed Hyundai and Bombardier

2    that it had issued a notice to proceed, and certainly the case

3    is ripe in the sense that there is no administrative protest or

4    state administrative proceeding pending that needs to be

5    resolved.

6           The complaint in this case was filed on January 20th.

7    Bombardier moved to intervene on January 28th, which I granted

8    on January 29th, and, again, the parties seek what is in

9    essence equitable relief in the form of declaratory judgments

03:55PM 10   or injunctions that either enjoin and restrained the MBTA and

11   CNR from proceeding with the contract and award the contract to

12   Hyundai and/or cancel the contract and reopen the contract to

13   rebidding, and the MBTA and CNR have filed motions to dismiss

14   based on lack of subject matter jurisdiction and sovereign

15   immunity.

16          The first issue is whether the MBTA is entitled to

17   sovereign immunity as an arm-of-the-state.  The courts in this

18   circuit apply a two-part test, first formulated in the

19   *Fresenius* case, 322 F.3d 56, First Circuit, 2003.  The first

03:56PM 20   part asks whether the entity created by the state is structured

21   to share in the state's sovereignty, which looks at various

22   factors.

23          There are, I think, eight of them that have been

24   identified, whether the entity performs an essential or

25   traditional government function as opposed to a nonessential or

merely proprietary one, whether it exercises substantial

autonomy over its internal operations, whether it enjoys

meaningful access to and control over funds not appropriated

from the state treasury, whether it possesses the status of a

separate public corporation, whether it may sue and be sued in

its own name, whether it can enter into contracts in its own

name, whether it has been granted a state tax exemption on its

property or whether it's been expressly debarred from incurring

debts in the state's name or on its behalf.

03:57PM          If those factors point in different directions, then

the Court looks to the second part of the *Fresenius* test, an

assessment of the risk of the damages awarded to the plaintiff

would be paid from the public treasury, and that analysis

focuses on whether the state has legally or practically

obligated itself to pay the entity's indebtedness.

          I don't think that there's any question really, the

MBTA doesn't take a contrary position that prior to the passage

of the Transportation Reform Act of 2009.  The MBTA was not an

arm-of-the-state.  Under this analysis, the MBTA was sued with

03:58PM  some frequency in courts, including federal courts, and there

has subsequently been a 2012 enactment that also changed or

potentially changed the calculus to some degree.

          Most of the elements that were present prior to the

reform act that led to the conclusion that the MBTA was not an

arm-of-the-state remain present today.  There is also specific

1    language that excludes the MBTA from certain provisions in

2    MassDOT enabling legislation that suggest that the MBTA should

3    not be considered an arm-of-the-state.

4         Among other things, the enabling act refers to the

5    MBTA as "a body politic in corporate, and a political

6    subdivision of the Commonwealth."

7         It has the power to hold property, to sue and be sued

8    in law and equity and to prosecute and defend actions relating

9    to its property and affairs.

03:59PM 10         It's liable for its debts and obligations.

11         It has the power to enter into agreements with other

12    parties, including government agencies, municipalities,

13    authorities and private companies.

14         It has the power to accept gifts, grants and loans

15    from local, state and federal governments, or from private

16    agencies or persons.

17         It has the power to issue bonds, and those bonds have

18    no guarantee, pledge or support from the Commonwealth, and the

19    MBTA's functions serve or extend only to the Greater Boston

03:59PM 20    area and not throughout the Commonwealth.

21         As has been pointed out, Chapter 6C defines

22    independent agencies to include but not be limited to the MBTA,

23    the Massport Authority and the Steamship Authority, whereas

24    MassDOT is included in the definition of state agencies in

25    Chapter 6C, Section 1.  Section 6C provides, among other

things, that the Massachusetts Attorney General shall represent MassDOT in civil actions, but that section explicitly excludes the MBTA.

Chapter 18 or Section 18 rather of Chapter 6C provides that MassDOT and its divisions, departments and agencies, but not including the Massachusetts Bay Transportation Authority, shall generally be considered to be an agency of the Commonwealth for various purposes.

Section 15 of Chapter 6C includes MassDOT as a public agency for purposes of state finance law but also explicitly excludes the MBTA.

Section 30 of Chapter 6C grants MassDOT, the Office of Planning and Programming, jurisdiction over the MBTA but also grants MassDOT jurisdiction over any regional transportation authorities, and although the reform act specifically referred to MassDOT as a public instrumentality and stated that the exercise by the department of the powers conferred by that chapter shall be considered to be the performance of an essential government function.  No such similar or essential governmental function language is used to refer to the MBTA.

Between 2009 and 2012, the MBTA has been subject to diversity jurisdiction in federal court on multiple occasions, including a case before me, the *CSX Transportation* case, and we also, as has been pointed out, Judge Stearns found in *Suprenant vs. Massachusetts Turnpike Authority* that the MBTA was not

1     entitled to sovereign immunity.

2          What has changed since then?  The principal change

3     came in 2012.  The MBTA's enabling statute has been amended so

4     that the MBTA is now governed and its corporate powers are

5     exercised by the MassDOT seven-member Board of Directors, which

6     is appointed by the Governor.

7          The MassDOT is obviously an arm-of-the-state.  Among

8     the MBTA's many powers, some are exercised by the Board, and,

9     therefore, they are now exercised by the MassDOT Board.  For

04:02PM 10    example, to appoint and employ officers, to hold, operate and

11    manage the Mass. transportation facilities and equipment

12    acquired by authorities, to adopt or repeal bylaws, rules and

13    regulations and so on.

14         That is not a minor change.  There are a number of

15    powers, again, that formally were held by the Board that are

16    now held by the MassDOT Board, and I think that moves the

17    needle on this inquiry from being clearly in favor of a finding

18    that the MBTA is not an arm-of-the-state to at a minimum moving

19    it much closer to such a finding.

04:03PM 20         However, as I've indicated, I do not think that it is

21    quite enough, but, in any event, the factors do point in

22    different directions, and, therefore, I'm going to proceed to

23    the second step of the *Fresenius* analysis, which is the

24    assessment of risk that damages awarded to the plaintiff would

25    be paid from the public treasury.

1          There is no claim for damages in this case, and

2    perhaps that's the end of the inquiry.  On the other hand,

3    there is a question here about whether the state has legally or

4    practically obligated itself to pay the entity's indebtedness

5    here.  The MBTA appears to concede that the Commonwealth does

6    not have any legal obligation, at least as things stand now, to

7    pay additional funds if the MBTA contracted with a bidder other

8    than CNR, and the MBTA's enabling act provides that the MBTA

9    shall be liable for its debts and obligations.  That's

04:04PM 10   Chapter 161A, Section 2.

11         The MBTA contends as a practical matter, the

12   Commonwealth would be obligated to pay.  Certainly it appears

13   that more than half of the MBTA's revenue at least in the past

14   fiscal year have been derived from state contributions, that

15   the MBTA has other sources of income such as passenger fare,

16   advertising revenues, bond revenues and the like, but it also

17   appears clear that as a practical and political matter, the

18   MBTA would not be permitted to run out of money and that the

19   state would step in to the breach should it be necessary.

04:04PM 20        Put it another way, it's hard to imagine that the

21   Commonwealth would not have to appropriate more money to the

22   MBTA if the contract ran over cost or if the MBTA was forced to

23   pay more for a different contract.

24         So to summarize, I think there are certainly good

25   reasons to conclude that the MBTA is not an arm-of-the-state,

1    which has been certainly what other courts have found for many

2    years.  There are arguments suggesting that the 2012 change

3    was, in fact, a significant change that changes the calculus,

4    but I am not going to make that finding here because as I see

5    it I don't need to because under *Pennhurst* I think the MBTA may

6    be entitled to sovereign immunity or to similar protections

7    depending on how *Pennhurst* and O'Brien are interpreted.

8         In *Pennhurst*, a 1984 case, 465 U.S. 89, the Supreme

9    Court considered whether a federal court could award injunctive

04:06PM 10   relief against state officials on the basis of state law.  The

11   Court indicated that the Eleventh Amendment bars a suit against

12   state officials when the state is the real substantial party in

13   interest.

14        When the state itself is named as the defendant, a

15   suit against state officials that is in fact a suit against a

16   state is barred regardless of whether it seeks damages or

17   injunctive relief.

18        There is an exception to that general doctrine.  In

19   *Ex Parte Young*, but *Ex Parte Young* and the *Edelman* case, which

04:06PM 20   is related, both involved claims that state officials violated

21   the Federal Constitution or were violating the Federal

22   Constitution, and that concern was not present in *Pennhurst*,

23   nor is it present here.

24        *Pennhurst* involved both, as counsel pointed out, state

25   official themselves as well as county officials who were not

1    agents of the state.   In the *O'Brien* case, 162 F.3d 40, First

2    Circuit, 1998, I read the critical passage earlier, the First

3    Circuit applied what may be a *Pennhurst* theory of sovereign

4    immunity to the MBTA.

5         Again, the First Circuit held that it was

6    inappropriate for the federal court to determine whether the

7    MBTA's acceptance or whether the state's acceptance of federal

8    funds violated state law.  As I indicated, it suggests that

9    that would invite the federal court to enjoin state officials,

04:07PM 10    those who manage the MBTA from acting in a manner that

11    allegedly contravenes state law, and the First Circuit held

12    that it is not the proper purview of a federal court to

13    supervise state official's compliance with state law.

14         Here, it seems to me that under some theory of

15    sovereign immunity or abstention or under Rule 19, failure to

16    join a necessary party, the MBTA can enjoy protections from

17    interference with the Federal Court.  Again, the theory is

18    fuzzy, but I think the broad principles are not, and they all

19    point in the same direction.

04:08PM 20         One way to approach the problem is that the MBTA, like

21    the state officials, is merely an agent of the state for these

22    purposes.  The officials in question were not the state

23    themselves, they were agents of the state, but relief being

24    requested in context would require the state officials in

25    effect to bind the state, and a similar theory might be

1    asserted here.

2         There's a Rule 9 analysis or component of this as

3    well.  Could relief be awarded without the presence of the

4    Department of Transportation or the Commonwealth?  The

5    contracts have to be approved by DOT.  They're effectively

6    awarded by DOT.  They're effectively funded by the

7    Commonwealth.  If the Department of Transportation is not a

8    party, can the Court afford complete relief under the

9    circumstances, which, again, seem to be one of the threads of

04:09PM 10    *Pennhurst*, particularly with regard to the county officials?

11         It's not clear whether the O'Brien case was asserting

12    a different thread than either of those, and there's an

13    abstention overlay in here, although that word is not used in

14    abstention.  Basically the abstention doctrines, and there are

15    more than one, provide that even if there is not sovereign

16    immunity, under some circumstances a federal court should

17    abstain from exercising its jurisdiction under certain

18    circumstances.

19         I think, frankly, that abstention is the most

04:10PM 20    intelligent and clearest approach to dealing with this issue.

21    Again, one of the overriding concerns in *Pennhurst* is the great

22    intrusion on state sovereignty that occurs when a federal court

23    instructs state officials how to conform their conduct to state

24    law, and under limited circumstances, a matter of discretion,

25    federal courts may dismiss or stay or transfer an action over

1    which it has subject matter jurisdiction.  That is an action in

2    which there is not sovereign immunity or Eleventh Amendment

3    immunity.

4         The Supreme Court has outlined a variety of different

5    type of abstention.  Federal courts have the power to refrain

6    from hearing cases that would interfere with a pending state

7    criminal proceeding with certain types of state civil

8    proceedings:  Cases in which the resolution of a federal

9    constitutional question might be obviated if state courts were

04:11PM 10  given the opportunity to interpret ambiguous state law; cases

11   raising issues intimately involved with the state's sovereign

12   prerogative, the proper adjudication of which might be impaired

13   by unsettled questions of state law cases whose resolution by a

14   federal court might unnecessarily interfere with the state

15   system for the collection of taxes; and cases which are

16   duplicative of a pending state proceeding.

17        The Court held in *Pennzoil* or noted in *Pennzoil*, I

18   should say, 481 U.S. 1, the jump cite is page 11, note 9, 1987

19   that the various types of abstention are not rigid pigeonholes

04:11PM 20  into which federal courts must try to fit cases.

21        There are two types of abstention that appear to be

22   the closest fits for the present case.  The first is *Thibodaux*

23   abstention -- for the reporter, T-h-i-b-o-d-a-u-x -- that's

24   where a Court may stay a diversity case raising issues that are

25   intimately involved with the state's sovereign prerogative, the

1    proper adjudication of which might be impaired by unsettled

2    questions of state law; and the second is *Burford* abstention,

3    B-u-r-f-o-r-d, which provides that where timely and adequate

4    state court reviews available, a federal court sitting in

5    equity must decline to interfere with the proceedings or orders

6    of state administrative agencies:  When there are difficult

7    questions of state law bearing on policy problems of

8    substantial public import whose importance transcends to result

9    in the case then at bar; or where the exercise of federal

04:12PM 10    review of the question in a case and in similar cases would be

11    disruptive of state efforts to establish a coherent policy with

12    respect to a matter of substantial public concern.

13          Neither type of abstention quite fits perfectly.  It's

14    not clear to me whether there are unsettled questions of state

15    law.  I think there are with regard to the bidding of this

16    contract with regard to the Governor's contacts, alleged

17    contacts with the bidder and the alleged illegal inducement to

18    enter into the contract.

19          It's also not clear to me that there is a state court

04:13PM 20    remedy in the sense of or I should say a state administrative

21    remedy.  It appears to be only provided by contract and not by

22    the agency, and it's unclear precisely what the standard would

23    be for review of this bidding process in state court.

24          Nonetheless, I think the principles underlying

25    *Thibodaux* and *Burford* abstention and the entire line of

1    abstention cases is applicable here as well as the concerns

2    raised in *Pennhurst*.  Again, it's a diversity action.  I'm

3    being asked to issue an injunction directly to a state agency

4    that does involve a claim that state officials have violated

5    state law in the awarding of a contract.  It's alleged to have

6    violated Massachusetts procurement laws or the MBTA procurement

7    laws as well as possibly state ethics laws and state public

8    record laws.

9        There really is little question as a practical matter

04:14PM 10    that state funds are implicated either at present or in the

11    future.  It is a matter of substantial public import and

12    interest.  The interests here are intimately involved with the

13    government's sovereign prerogative.  Again, the Commonwealth is

14    funding the entire contract.  It's a matter of substantial

15    significance to the Commonwealth.

16        Again, the principal claim or one of the principal

17    claims in the complaint is that the contract price is

18    unrealistic, predatory and dangerously low.  If that fact is

19    proved, it directly implicates whether additional funds would

04:15PM 20    need to come from the Commonwealth's treasury.

21        Again, the complaint contains numerous allegations of

22    wrongdoing, not only on the part of the MBTA and its officials

23    but on the part of the Department of Transportation and the

24    Governor, and under the circumstances here, even if for some

25    reason the MBTA is not entitled to sovereign immunity as an

1    arm-of-the-state, even if it's not entitled to some variation

2    of *Pennhurst*-type sovereign immunity, even if Rule 19 and the

3    values or issues underlying Rule 19 are not applicable, it

4    seems to me that the federal courts ought to abstain from

5    deciding this issue under the circumstances, and, therefore, I

6    think the appropriate thing to do is to dismiss the case for,

7    alternatively, either lack of subject matter jurisdiction based

8    on immunity, or due to a variation of the abstention doctrines

9    and to permit plaintiffs to file a new proceeding in the

04:16PM 10    superior court in which the same claims and issues can be

11    asserted, and the state courts will have the opportunity to

12    pass on the legality and proprietary of the conduct of state

13    officials.

14         Before I go any further, let me check with my law

15    clerks and see what I've misstated or omitted.

16         My law clerks pointed out that at one point I said

17    Rule 9 rather than Rule 19.  Obviously that was a mistake and

18    that there were two Judge Stearns cases between 2009 and 2012.

19    Both I think reached a similar result or at least involved

04:17PM 20    similar positions by the MBTA.

21         Is there anything that counsel want me to clarify or

22    to otherwise to take up in order to ensure that this is, I

23    assume it's an appealable act, that the defendants can take an

24    appeal if they choose to?

25         Let me start I guess with the moving party.

1    Mr. Albano, is there something you want me to do or say any

2    further?

3         MR. ALBANO:  Nothing from me, your Honor.

4         THE COURT:  Mr. Lewin.

5         MR. LEWIN:  Nothing, your Honor.

6         THE COURT:  Mr. Varn.

7         MR. VARN:  Nothing.

8         MR. TOBIN:  Nothing, your Honor.

9         THE COURT:  Thank you, all.  It was very well briefed

04:18PM 10   and argued.  Again, under other circumstances I might write the

11   perfect opinion and take several weeks, if not months to do so,

12   and you'll have to make do with my hastily-read and hopefully

13   not too error-filled oral opinion, but I will direct the clerk

14   to enter an order dismissing the case in accordance with my

15   ruling today, and thank you, all.

16        MR. VARN:  Thank you, your Honor.

17        THE CLERK:  All rise.

18        (Whereupon, the hearing was adjourned at

19   4:19 p.m.)

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6

7            I do hereby certify that the foregoing transcript,

8    Pages 1 through 62 inclusive, was recorded by me

9    stenographically at the time and place aforesaid in Civil

10   Action No. 15-10132-FDS, HYUNDAI ROTEM COMPANY vs.

11   MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, et al. and

12   thereafter by me reduced to typewriting and is a true and

13   accurate record of the proceedings.

14           Dated this 25th day of March, 2015.

15

16                      s/s Valerie A. O'Hara

17           _____

18               VALERIE A. O'HARA

19               OFFICIAL COURT REPORTER

20

21

22

23

24

25